## JAMES v. ROBERTSON.

No. 2221.   Decided September 14, 1911 (117 Pac. 1068).

1. APPEAL AND ERROR—VERDICT—SUFFICIENCY OF EVIDENCE—REVIEW. The Supreme Court may not pass on the weight of evidence, in an action at law, and when it is urged that the evidence is insufficient to support the verdict it can only review the evidence so far as to determine whether there is any substantial evidence in support of the verdict.   (Page 421.)

2. NEGLIGENCE—EVIDENCE—SUFFICIENCY. The rule that, where a plaintiff suing for negligence produces evidence consistent with an hypothesis that defendant is not negligent, and also with one that he is, the proof tends to establish neither, applies only where plaintiff's evidence, when considered alone, has such an effect, or when the jury finds the evidence equally balanced, and does not apply where all the evidence produced by both sides, some of which is in conflict, is capable of such a construction.   (Page 428.)

3. NEGLIGENCE—EVIDENCE—SUFFICIENCY. A plaintiff suing for negligence need merely show a state of facts from which the jury may logically infer negligence, and, where the jury believes plaintiff's evidence from which the inference of negligence may be deduced, the evidence ordinarily sustains a finding of negligence, though defendant disputes all of plaintiff's evidence.   (Page 428.)

4. Physicians and Surgeons—Action by Patient—Negligence—Evidence. In an action against a physician for negligently permitting carbolic acid to come in contact with the cornea of a patient's eye, after removing a cyst from the eyelid, evidence *held* to justify a finding of negligence, authorizing a recovery. (Page 429.)

5. Evidence—Expert Evidence—Weight—Conflicting Inferences. Where conflicting inferences may be drawn from the opinions of experts, the jury may disregard one class of opinions and base their verdict on the other. (Page 430.)

6. Physicians and Surgeons—Liability for Unskillful Treatment—Evidence. The rule that, to authorize a finding that a physician was guilty of negligence in treating a patient, there must be proof from witnesses possessing the required skill, knowledge, and experience that the acts complained of did not measure up to the professional standard cannot be applied to its full extent where a physician did not justify his act, and where a physician, sued for negligently permitting carbolic acid to come in contact with the cornea of an eye of a patient, after removing a cyst from the eyelid, claimed that no part of the acid entered the eye, or that, if any of the solution entered the eye, it was not of sufficient strength to produce the injury complained of, and that the injuries complained of were produced by causes for which he was not responsible, a finding against him need not be supported by expert testimony as to his professional skill, knowledge, and experience. (Page 431.)

7. New Trial—Discretion of Court. A party has the unqualified right to move for a new trial in every case, and the trial court in passing on a motion therefor is invested with a sound legal discretion.[1] (Page 432.)

8. Appeal and Error—Denial of New Trial—Review. The Supreme Court may not exercise the discretion which the district court ought to have exercised in granting a new trial; and where the trial court has refused to grant a new trial the Supreme court may only look into the evidence to ascertain whether there is any substantial evidence in support of the verdict. (Page 432.)

Appeal from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

---

[1] Law v. Smith, 34 Utah, 407, 98 Pac. 300; Brown v. Salt Lake City, 33 Utah, 241, 93 Pac. 570, 14 L. R. A. (N. S.) 619, 126 Am. St. Rep. 828.

Action by Jane James against J. E. Robinson.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*C. S. Varian* for appellant.

*W. H. King* for respondent.

APPELLANT'S POINTS.

"In order that a decision of fact may be exempt from disturbance for not being supported, on the ground that there is evidence on both sides, there must be substantial evidence on both sides—in other words, there must be a substantial conflict. And although a finding by a jury or trial will not be distributed on the ground that it is not warranted by the evidence where there is presented a fair, reasonable ground for a difference of opinion, yet where the great current of evidence is against the finding or verdict and the appellate court is convinced that it is wrong, it will not be deterred from setting it aside by the contention that one or two general statements or assertions of one or two witnesses bring the case within the rule which governs where there is a substantial conflict of evidence." (Spelling on New Trial and Appellate Practice, p. 1445, sec. 678; *Field v. Shorb,* 99 Cal. 661-666, 34 Pac. 504-505; *In Re Coburn,* 11 Cal. App. 604, 105 Pac. 925.) This is the general rule, and this court has given it substantial recognition from time to time.

It shall be claimed in support of the verdict that there are circumstances which tend to establish the theory advanced by the plaintiff, the answer is that the circumstances in the case are not inconsistent with a theory that the injury was not the result of any negligence of the defendant. (*Asbach v. Chicago, B. & Q. Ry. Co.,* 74 Iowa, 248, 37 N. W. 182; *Chicago, R. I. & P. Ry. Co. v. Rhoades,* 64 Kan. 553, 68 Pac. 58; *Ruppert v. Brooklyn Heights R. R. Co.,* 154 N. Y. 90, 47 N. E. 971; *Smith v. First Nat'l Bank,* 99 Mass. 605; *U. S. F. & G. Co. v. Des Moines Nat'l Bank,* 8 C. C. A. 145;

*Ewing v. Goode*, 78 Fed. 442-444; *Crafts v. Boston*, 109 Mass. 519-521.)

The evidence of specialists undisputed and undiscredited, upon highly recondite subjects, about which men in general can have no knowledge, must be accepted as decisive of such questions by the court and jury. (*Ewing v. Goode*, 78 Fed. 444; *Stern v. Laung* (La.), 31 313; *Shelton v. Hacelip* (Ala.), 51 So. 937; *Farrell v. Haze*, 157 Mich. 374, 122 N. W. 197; *Petigrew v. Lewis* (Kan.), 26 Pac. 458 ); but their opinions may not be disregarded, if not discredited and the nature of the case is such that a juror's experience, knowledge and common sense cannot aid him in reaching a correct conclusion. (*Kerwin v. Friedman*, 127 Mo. App. 519, 105 S. W. 1102; Roger's Expert Testimony, p. 490, par. 5; *Getchell v. Hill*, 21 Minn. 464; *Woods v. Barker*, 49 Mich. 295, 13 N. W. 597; *Neifert v. Hasley* (Mich.), 112 N. W. 705; *Feeney v. Spalding* (Me.), 35 Atl. 1027.

It is not enough to show the injury together with the expert opinion that it might have occurred from the negligence and also other causes. Where the evidence of plaintiff is consistent with an hypothesis that the defendant it not negligent, and also with one that he is, plaintiff's proof tends to establish neither. *Patten v. Texas Pac. R. R. Co.*, 179 U. S. 658-663; *U. S. v. Am. Surety Co.*, 161 Fed. 151; *Ewing v. Goode*, 78 Fed. 442; *Searles v. Manhattan Ry. Co.*, 101 N. Y. 661, 5 N. E. 66; *Harvard County v. Wise*, 75 Md. 38, 23 Atl. 65; The Nellie Flag, 23 Fed. 671; *Electric Co. v. Croning*, 66 Fed. 658; 2 Labatt M. & S., sec. 837 and notes.

Where the premises are uncertain, no inference of fact or law can be reliably drawn therefrom, and where circumstantial evidence is relied upon to prove a fact, the circumstances must be proved—they cannot be presumed. (*U. S. v. Ross*, 92 U. S. 281-283; *Manning v. Ins. Co.*, 100 U. S. 693-697; *Xenia Bank v. Stewart*, 114 U. S. 224-231; *Cunard Company v. Kelly*, 126 Fed. 610-615.)

In cases of malpractice, evidence showing a mere conjectural possibility that unfavorable results were due to a want of skill or care on the part of the physician or surgeon, is not sufficient to make out plaintiff's case. Liability in such a case cannot be based upon non-expert testimony. There must be expert evidence tending to show a lack of care or skill, and since the plaintiff must show an injury resulting from the lack of skill or care of defendant, if he fails in this particular a verdict in his favor is contrary to law and must be set aside. (3 Wharton & Stille's Med. Jur. (1905), sec. 517; *Barker v. Lane,* 23 R. I. 234, 49 Atl. 963; *Sheldon v. Wright,* 67 Atl. 807-814; *Georgia R. K. Co. v. Ingram,* 40 S. E. 76; *Lowe v. Metropolitan St. Ry. Co.* (Kan.), 130 S. W. 116.)

It is submitted that in the light of the evidence and the settled conviction of the trial judge, the defendant had a legal right to a new trial. (*Sharp v. Green,* 22 Wash. 677, 62 Pac. 150; *In Re Carrigan Estate,* 194 Cal. 81; 37 Pac. 785; *Patten v. Hyde,* 23 Mont. 23, 57 Pac. 407-408 and cases cited; *Chicago, R. I. & P. Ry. Co. v. Reardon* (Kan.), 40 Pac. 931; *Railroad Company v. Ryan,* 30 Pac. 108; *Law v. Smith,* 34 Utah, 395-407; *Brown v. Salt Lake City,* 33 Utah, 541-2.

### RESPONDENT'S POINTS.

The question of the sufficiency of the evidence to support a verdict or judgment in a case at law, under section 9, article 8 of the Constitution of Utah, is exclusively within the province of the trial court and the jury. (Sec. 9, art. 8 Const.; *Hill v. Ry.,* 23 Utah, 84; *Nelson v. Ry.,* 15 Utah, 325; *Whittaker v. Ferguson,* 16 Utah, 243; *Bacon v. Thornton,* 16 Utah, 138; *Kennedy v. Ry.,* 18 Utah, 329; *Wilde v. M. Co,* 23 Utah, 265; *Linden v. M. Co.,* 20 Utah, 134; *Budd v. Ry.,* 23 Utah, 515; *Loan Co. v. Desky,* 24 Utah, 347; *Braegger v. Ry.,* 24 Utah, 391; *Whitmore v. R. R.,* 24 Utah, 215.)

FRICK, C. J.

This action was instituted by respondent to recover damages for the loss of the sight of one eye, which she alleged was caused through appellant's unskillfulness and negligence. Respondent, in her complaint, among other things, alleged: "That on the 26th day of February, 1906, the plaintiff went to the office of the said defendant, at Bingham Junction, Utah, and that then and there, at plaintiff's request, the defendant was employed to remove a cyst from the upper eyelid of plaintiff's right eye. "That after the defendant removed said cyst from defendant's eye, as aforesaid, the said defendant applied a certain liquid to the upper eyelid of the plaintiff's right eye, which said liquid plaintiff believes to have been some kind of an acid. That said liquid, which was applied to said plaintiff's eye, as aforesaid, was allowed to drop from the instrument with which said defendant was applying said liquid upon plaintiff's face, making a number of burns upon plaintiff's face. That within a few minutes after said defendant applied said liquid to said plaintiff's eye, as aforesaid, the said plaintiff began to suffer intense pain and agony, and continued to suffer the same for a period of about twenty-five days. That said plaintiff continued to visit defendant for the purpose of having said eye treated until on or about March 12, 1906, when plaintiff was informed by defendant that he could do nothing more for her, and plaintiff then came to Salt Lake City, and entered St. Mark's hospital March 17, 1906. . . . That for three weeks after defendant placed said liquid, as aforesaid, upon plaintiff's eye said plaintiff was unable to get any rest on account of the intense pain and suffering which said liquid, being placed upon plaintiff's eye, caused her, and was compelled to walk the floor intermittently day and night. That said liquid which said defendant placed upon plaintiff's eye, as aforesaid, burned to the pupil of plaintiff's eye in such a manner that the sight thereof is practically destroyed, and caused a scar to form upon the plaintiff's said right eye, destroying the sight thereof, and that the plaintiff is compelled, when out of doors, to wear colored glasses, or some

covering or protection over her eye, or keep it shut while in the light. Plaintiff further alleges that the present condition of her eye, and the loss of sight thereof from which she is now suffering, is the natural and proximate result of the negligence and lack of skill of the said defendant, used when operating upon her eye, as aforesaid. Said plaintiff further alleges that said defendant was negligent and careless and lacked the proper skill in performing the operation upon her eye, as aforesaid, in this, to-wit: In negligently and unskillfully placing upon plaintiff's eye such liquid, as aforesaid, which the plaintiff believes to have been some kind of acid, in such a manner that said liquid would get into the eye and burn through the lid, and causing the pupil of the eye to be burned and scarred, although the defendant well knew, or should have known, had he possessed the proper amount of skill for performing such an operation, that said liquid, if it were allowed to touch the ball of the eye, would in all probability destroy the sight thereof."

Appellant, in his answer to the complaint, admitted that he had removed a cyst from the upper eyelid of respondent's right eye; that he "applied a certain liquid to the outside of the upper eyelid of plaintiff's right eye;" and that "the sight of the plaintiff's right eye was and is impaired by reason of a certain corneal ulcer, but that said ulcer was in no wise the result of the treatment of this defendant, or the operation aforesaid." Appellant also denied all negligence and want of skill on his part, and affirmatively set forth the facts as he asserted them to be with respect to the operation, and as to what caused the loss of sight of plaintiff's eye.

Upon substantially these issues a trial was had, and the jury returned a verdict in favor of respondent. The court denied a motion for a new trial, and judgment was entered on the verdict. Appellant produces the record in this court, and asks us to reverse the judgment.

One of the principal assignments is that the court erred in refusing to direct a verdict for appellant. The request for a directed verdict was based upon the ground that respondent's evidence was insufficient to take the case to the jury.

It is insisted in this court that there is no substantial evidence upon which to base a verdict in favor of respondent, and hence the judgment in her favor should not be permitted to stand. As we are prohibited by our Constitution from passing upon the weight of the evidence in law cases, we can review the evidence for the purpose only of determining whether there is any substantial evidence in support of every essential element the respondent was required to prove, in order to entitle her to recover. In this regard the court charged the jury as follows: "Before plaintiff can recover in this case, she must establish by a preponderance of the evidence that the defendant negligently permitted an acid, or other liquid, of sufficient strength to cause a lesion of the corneal tissues of the eye, to drop or escape into the eye beneath the lids, and that the acid, or other liquid, did cause a lesion of the corneal tissues, resulting in the ulcer which caused the pain and loss of sight complained of. It is not sufficient for the evidence to show only that an acid, or other liquid, of sufficient strength to cause such a lesion with the resulting injury, might have been dropped or permitted to escape into plaintiff's eye. Before you can find for the plaintiff, you must be satisfied by a preponderance of all the evidence that some acid or other liquid, of sufficient strength to cause a lesion of the corneal tissues of plaintiff's eye, was permitted or suffered by the defendant, while operating upon the eyelid of plaintiff's right eye, to drop or in some way escape into her eye, and that such acid or liquid did cause such lesion and the resulting injury; and you must also further find by a preponderance of all the evidence that the defendant was negligent in suffering or permitting the acid or liquid to drop or escape into plaintiff's eye. If from the evidence in the case you find that it is not established by a preponderance thereof that the injury to plaintiff's eye was the proximate result of the failure by defendant to use ordinary care, and thereby permitting some acid, or other liquid, he was using to get into plaintiff's eye, the plaintiff cannot recover. Or, if it appears from the evidence that the injury suffered by plaintiff might have been

occasioned by one or more causes, independent of any act or omission of defendant, and the preponderance of the evidence fails to show that it was caused by some negligent act or omission of defendant, as alleged in the complaint, plaintiff cannot recover. Or if, under the evidence, it is just as probable that the injury was the result of an independent cause, as by the negligent act or omission of defendant, plaintiff cannot recover."

The evidence in support of respondent's claim in substance shows that on the 26th day of February, 1906, she went to defendant's office to pay him a bill; that prior to that time he had been respondent's family physician, and she then spoke to him about the "wart," as she called it, on the upper eyelid of her right eye, and asked him whether he could remove it, and he informed her that he could do so easily; that he did remove the cyst by cutting it off, and in doing so she says "he applied something to the sore with a steel instrument." The "something" referred to was a liquid, and some of it, she says, dropped on "two places on my cheek," and produced a "burning sensation" and pain. "Q. Did any of it get into the eye? A. I don't know. I had burning sensation and pain. It was quite severe in the eye. It was the eye that was giving me trouble. Q. Could you feel any liquid in the eye? A. My eye felt full of water—like water." She says that she felt the pain in the eye immediately after appellant had applied the liquid; that when appellant applied the liquid she was sitting upright in a "straight chair," with her head "thrown back a little." The record then proceeds: "Q. And some of the liquid ran into your eye and some on to your face? A. Yes, sir." Respondent further stated that appellant obtained the liquid he used "from behind a little place he had there." Q. Was any thing said about these burns that were on your face where the liquid had dropped onto? A. He got some cotton batting and padded them, and said, 'I tried to burn you, didn't I?'" After this appellant bandaged the eye, and respondent says she suffered severe pain in it; that she at once left appellant's office, and on her way home stopped at a

neighbor's, because her eye was paining her so she thought
she would rest; that it took her fifteen or twenty minutes to
reach the neighbor's house from the appellant's office; that
she was at the neighbor's house only a short time, when she
lifted the bandage that was over the eye, and looked at her
eye by looking into a mirror; that the eye "was just as red
as it could be—inflamed—highly inflamed;" that the eye
was paining her then; that she looked at the eye again that
evening, and "it was red, awfully red, and there was some-
thing on the lower part of the dark part, the lower part" of
the eyeball; that she did not rest any that night on account
of the pain; that she saw appellant at his office the next
morning, and he looked at the eye, and told her to come and
see him on the following day; that she then told him about
the pain, and that she did not sleep any the preceding night;
that appellant saw her after that about every day, either
at his office or at her home, until the 12th day of March,
1906; that during the time, from the 26th of February to
the 12th of March following, she was suffering intense pain
all of the time, and could not rest; that on the 12th day of
March appellant, after examining the eye, advised her to go
to Salt Lake City to an eye specialist, to whom she went at
once, and the specialist told her that her eye "was in a bad
condition;" that the specialist directed her to go to a hos-
pital, which she did, and remained there under his care a
number of months. Respondent further said that when ap-
pellant removed the cyst from the eyelid her eye was in per-
fect condition; that she never had had any trouble with her
eye before, and that her general health was good; that from
the time of the operation she had had no use of the eye, and
that at the time of the last trial (February, 1910) her right
eye was practically blind.

Mrs. Lewis, the woman to whom respondent referred as
her neighbor, testified in substance that she saw the respond-
ent on the day she had the cyst removed; that she then had
her eye bandaged and "appeared to be in pain;" that the wit-
ness looked at the eye, and it was red—inflamed; that wit-
ness had known respondent for about fifteen years, and

that she had always been healthy, and witness never had noticed anything wrong with her eyes. The witness further said that she did not notice any burns on respondent's face at the time.

Respondent's husband testified in substance that he saw respondent in the morning, when he went to work; that her eyes at that time were in good condition; that he and respondent had been married about twenty years, and that during that time she never had had any trouble with her eyes; that he saw respondent on the night of the operation, and she then had her eye bandaged, and removed the bandage, and the witness saw three burns about the size of a nickel on her face, two on the cheek, and one on the side of the nose. He further said: "I looked at the eye. There was a water blister, like a drop of water, on the pupil. It was all inflamed on the center of the eye; it covered the center of the eye—the dark part. It was a water blister, like from a burn." That from her actions it seemed she was suffering pain, and that she could not sleep.

An eye specialist, called on behalf of respondent, also testified that he had made an examination of respondent's eye; that his examination was made in May and June, 1908; that there is a scar covering practically the lower half of the cornea of respondent's right eye; that if some acid or caustic agency had been applied to the cornea or eyeball it would produce a condition like or similar to that which he found in respondent's eye; that if some acid had been dropped into the eye, as claimed by respondent, it would produce the condition found in her eye; and that such condition was permanent. The witness, in answer to an hypothetical question, also said that from his examination of the eye he believed that its present condition was caused by "the action of some caustic. I am not sure that it was acid; caustic alkali would act in the same way. . . . Certain other caustics might act in the same way." On cross-examination the witness further said that in his judgment it was likely that the respondent had had "a corneal ulcer, and that such an ulcer might be formed from the

admission of a foreign substance into the eye, if sufficient to cause a lesion, so as to admit bacteria;" that he could not say what produced the ulcer in respondent's eye. On redirect he said that "a burning of the cornea by an acid, if bacteria gets in, would produce a corneal ulcer which might become malignant, or might pass away very quickly," and that the scar on respondent's eye would cause her blindness.

As already intimated, since we cannot pass upon the probative force or weight of the evidence, it is useless for us to set forth appellant's evidence, except to show his admissions. He admitted that he removed the cyst from respondent's eyelid, and explained the manner in which it was done. He said that after the cyst had been removed by a severance from the eyelid it left a slight wound, which, in order to prevent a recurrence of the cyst, he scraped with a steel instrument. After this, he tells us: "I next took a piece of matchwood —soft wood like a match—and touched the end in a solution of one part in eight of carbolic acid, and applied that end to the sore spot. . . . I then neutralized with alcohol by means of cotton wet with alcohol. Plaintiff complained, and said that I was burning her nose, but did not complain of any burning anywhere else until afterwards. I discovered that I was touching her nose with the matchwood, as I held it in my fingers, as I moved my hand in neutralizing the place, which rubbed against her nose. I held the match stick in the same hand I was using to apply the cotton batting with alcohol. I was holding the batting between my finger and thumb, and the match stick was between my fourth and third fingers. It did not drop any of the solution. I did not notice any place on the cheek at first, only the one place on the nose. I noticed three places the next day." Appellant next explained his mode of treating respondent's eye, and the visits she made, and his testimony in many respects directly conflicted with hers. Dr. Pfoutz, an eye, ear, and nose specialist, and to whom respondent went at the request of appellant, testified on behalf of appellant that when respondent came to him he "found an ulcer on the cornea, almost per-

forating the globe of the eye;" that he cauterized the point
of the ulcer with a small, hot iron probe. The doctor further
said that there were many causes that might have produced
the condition in which he found respondent's eye. He also
said that, even though the solution which appellant said he
used was permitted to enter respondent's eye, in his judgment
such a weak solution would not injure the eye. The doctor
stated, however, that a carbolic acid solution of a given
strength might, and he believed would, produce a corneal
ulcer, such as he found in respondent's eye. On cross-exam-
ination he was asked the following questions, to which he
made answers as stated: "Q. The introduction into the eye
of a solution of carbolic acid, one in eight—one part carbolic
acid to seven parts of water—would be very apt to erode or
eat away a portion of the cornea with which it came in con-
tact, wouldn't it? A. I question that, sir. Q. Wouldn't
it erode it? A. If left in contact long enough, it would."
There were other experts who in effect testified that at the
time respondent's expert examined her eye it was impossible
to state what caused its condition, in view of the length of
time that had elapsed, and the condition it was then in. They
also stated that a solution of carbolic acid as weak as that
which appellant stated he used would, in their judgment, not
cause or produce a corneal ulcer, such as was found in re-
spondent's eye. We remark that there is no evidence that we
can find that any one or more of the causes which the ex-
perts said might produce corneal ulcers and bring about the
condition of respondent's eye when first seen by Dr. Pfoutz,
the specialist, were actually present, or that any one or more
of such causes actually affected respondent's eye. In this
regard, all that the evidence shows is that she at times was
exposed to conditions from which such results were possible,
but there is no evidence that she came into actual contact
with any of the causes named by the experts.

It seems to us that from the foregoing the conclusion is
almost unavoidable that there is at least some substantial
evidence in support of the jury's findings. The following
salient and, as we think, controlling facts are not seriously

questioned, namely: That respondent, at a time when she was in at least fair health, and when her eye was in good condition, had a slight operation performed upon the eyelid of her right eye; that the operation did not, and was not intended to, affect the interior portions of the eye, but was intended to affect merely the free end of the eyelid; that after the operation appellant applied some liquid to the wound which he says was a weak solution of carbolic acid; that in doing so he burned respondent's face with the solution below and in the vicinity of the eye in three places; that a short time after this (only about fifteen or twenty minutes) respondent, on her way home from appellant's office, stopped in at her neighbor's because of great pain in her eye; that her eye was then much inflamed, and the pain continued and increased; that on the evening or night of that day respondent's husband examined the eye, and he found a blister in it, as though the eye was burned; that the eye kept getting worse until the twelfth day of March, or about fourteen days after the operation, when appellant requested respondent to go to Dr. Pfoutz, who is an eye specialist; that Dr. Pfoutz, when he saw respondent's eye, discovered that she was afflicted with a corneal ulcer, which ultimately caused the loss of her eyesight. It may be said that about every one of the experts called by appellant concedes that such an ulcer might, and probably would, be caused by a solution of carbolic acid, if the solution were permitted to remain in contact with the cornea for a considerable length of time. It is also conceded by all that a carbolic acid solution, if strong enough, would produce many, if not all, the symptoms described by respondent and her witnesses. True all of the experts also say that there are many causes, other than carbolic acid, that might bring about corneal ulcers, but there is no testimony that we can find that any one or more of such causes were actively present and operating in respondent's case.

The contention that respondent must fail because of the doctrine announced in *Ewing v. Goode* (C. C.), 78 Fed. 444, that, "when a plaintiff produces evidence that is consistent

with an hypothesis that the defendant is not negligent, and also with one that he is, his proof tends to establish neither," cannot prevail, in view of the facts in the case at bar. That doctrine applies only where the plaintiff's evidence, when considered alone, has such an effect, or when the jury finds the evidence equally balanced, and not, as appellant's counsel seems to contend, when all of the evidence produced by both sides, some of which is in dispute, is capable of such a construction. The reason the rule is not applicable in the latter event is obvious. There is no law which binds a jury to believe any of the defendant's evidence which conflicts with that of the plaintiff. The doctrine, therefore, ordinarily cannot apply in case of conflicting evidence. In a case, however, where plaintiff's evidence, when considered alone, produces such a result, or if the jury find the evidence equally balanced, they may not, by mere conjecture, supply the defect in plaintiff's evidence, and find the ultimate fact of negligence. Under such circumstances, the plaintiff has not established his case by a preponderance of the evidence, as he must do in order to prevail.

In a case where the question is whether the defendant was guilty of negligence or not, the plaintiff need, however, merely show a state of facts from which the jury may logically infer negligence; and if the jury believe plaintiff's evidence from which the inference of negligence may be deduced it may be, and ordinarily is, sufficient to sustain a finding of negligence; and this is so, even if the defendant disputes all of plaintiff's evidence, or produces evidence from which the jury might find that the injury complained of was due to a cause or causes for which the defendant was not responsible.

In this connection appellant's counsel strenuously insists that the court erred in refusing the following request to charge: "If it appears from the evidence that the loss of sight by plaintiff in her right eye might have been occasioned by one or more causes, for which defendant was not responsible, the plaintiff cannot recover, although the evidence may

also be consistent with the hypothesis that the injury resulted from the negligent acts of the defendant, as alleged in the complaint." From what we have already said it is apparent that counsel's contention cannot prevail. As intimated before, the request does not state the law correctly. The law is not that a plaintiff must fail in case the injury of which he complains *might* have been caused—that is, that there was a possibility that it was caused—by some cause or causes for which the defendant was not responsible, but he must fail only when it is just as probable from the evidence adduced by the plaintiff, or in case the evidence is equally balanced, that the injury was produced by some cause for which the defendant was not responsible, as it is that it was produced by a cause for which he was. The law is correctly stated by the New York Court of Appeals, in the case of *Searles v. Manhattan Ry. Co.,* 101 N. Y. 661, 5 N. E. 66, where it is said that the plaintiff must fail if it is just as probable that the injury was caused by a cause for which the defendant was not responsible, as it is that it was caused by one for which he was. It must be understood that the court here referred to a state of the evidence where there was no conflict, or where it is evenly balanced upon that question. The mere fact that there is a possibility that the injury complained of was produced by some other cause than that claimed is not enough, but, as said by the New York Court of Appeals, the rule applies only when there is a probability arising out of plaintiff's, or the undisputed, or evenly balanced, evidence that it was so caused. By an examination of the charge given by the court, and which we have set forth in full, it will be seen that the law was properly stated upon this subject.

Appellant also contends that the verdict is contrary to the charge of the court, which we have set forth in full at the beginning of this opinion. If our conclusions are right so far, however, and we think they are, then it follows that this contention cannot prevail.

It is further insisted that the verdict and judgment cannot stand because there is no competent evidence in this case

from which the jury were authorized to find appellant guilty of negligence in his treatment of respondent's eye. In this connection it is contended that there · is no expert evidence upon which the jury could base a finding that the appellant had not exercised that degree of skill and care which is ordinarily exercised by those engaged in his calling in like or similar cases. It will be observed that this case is somewhat peculiar, in that the injury complained of did not really arise out of any want of skill on the part of the appellant in performing the operation on respondent's eyelid, in so far as the operation is concerned. The injury to the eye was caused by an act which did not necessarily require any more than the skill, knowledge, and experience of any ordinarily prudent person. If appellant permitted a solution of carbolic acid to come in contact with the cornea of respondent's eye, without any necessity therefor, and of such strength as would injure the eye, he might be found guilty of negligence. Assuming the fact to be as found by the jury, that the appellant unnecessarily did cause a solution of carbolic acid to come in contact with the cornea of plaintiff's eye, and that such solution was of sufficient strength to produce the corneal ulcer found in her eye by Dr. Pfoutz, the appellant may have been guilty of culpable or actionable negligence. Whether some of the carbolic acid solution which appellant admits he used came in contact with the cornea of respondent's eye or not was a question of fact which the jury could have deduced from the testimony of respondent's witnesses, when considered in connection with the prevailing symptoms following the operation, and from the subsequent results which the experts said could and may have been produced by the admission of the solution into the eye. In view, therefore, that the experts concede, that the symptoms as they were observed, and the results to the eye as the same were seen by at least some of the experts, are the natural and ordinary symptoms and results in cases where a solution of carbolic acid comes in contact with the cornea of the eye, there is sufficient expert evidence, if such is needed, upon which the jury could base a finding, although

the experts may also have said that, in their opinion, the particular solution did not cause the injury to respondent's eye. In view of the conflicting inferences that could be deduced from the opinions of the experts, the jury had a right to disregard the latter opinion expressed by those experts.

It is true, as appellant's counsel suggests, that in order to authorize a finding that one who is following a profession or calling requiring special skill, knowledge, and experience is guilty of negligence or unskillfulness it is necessary to furnish some proof from some source possessing the required skill, knowledge, and experience that the acts complained of did not measure up to the standard of skill, knowledge, and experience required in the particular calling or profession. In this case, however, the principle cannot be applied to its full extent, for the reason that appellant did not come into court justifying his act or conduct; that is, he does not claim that, if he permitted a solution of carbolic acid to come in contact with the cornea of respondent's eye, in doing so his conduct was justified by the ordinary and usual methods which are pursued by those of his profession under like circumstances. In other words, appellant does not claim protection because he has conformed to the standards of his profession. What he really contends for in this connection is: (1) That no part of the solution he used was through any act of his permitted to enter respondent's eye, and hence he was not negligent in that regard; (2) that, although it were conceded that some of the solution did enter respondent's eye, yet the solution was not of sufficient strength to produce the injury complained of; and (3) that the result to the eye was produced by a cause or causes for which he was not responsible. It is apparent that most, if not all, of the conclusions involved in the foregoing propositions do not necessarily call for expert evidence.

It is also insisted with much vigor that the district court erred in denying a new trial. This contention is principally based upon the facts that on a former trial of this case at which the evidence was substantially the same as upon the present one, and where the same judge who presided at the

last trial also presided, such judge granted a new trial to
appellant upon the ground, as we understand coun-
sel, that the evidence did not justify the verdict of
the jury in favor of respondent. From some re-
marks made by the judge in refusing to set aside the last
verdict, counsel insists that the judge was still of the same
opinion that the verdict should not prevail; and hence he
should have granted a new trial, and in refusing to do so
he had abused the discretion vested in him in passing on
motions for new trials. Upon this question counsel reminds
us that in former decisions we held that a party had the
unqualified right to move for a new trial in every case; that
in passing upon a motion for a new trial the trial court was
invested with a sound legal discretion, and that the moving
party was entitled to invoke this discretion in his behalf.
(See *Law v. Smith,* 34 Utah, 407, 98 Pac. 300; *Brown v.
Salt Lake City,* 33 Utah, 241, 242, 93 Pac. 570, 14 L. R.
A. [N. S.] 619, 126 Am. St. Rep. 828.) We have not as
yet, however, held that we have the power to review, and
thus indirectly control, the exercise of the discretion before
referred to. Assuming that in this case we were invested
with the discretion of the district court, and that we in pass-
ing upon the question of whether, in view of all the evidence,
the verdict should be permitted to stand or not, should arrive
at a conclusion that, in an exercise of a sound legal discre-
tion, the new trial should be granted, would the fact that in
this regard we disagreed with the trial court authorize us to
review his ruling upon the facts? If we did so, it would
simply amount to passing upon the weight that is to be given
to the evidence. This would be a clear evasion of the con-
stitutional provision that appeals to this court, in law cases,
must be limited to questions of law only.

While the district court, in the exercise of a sound legal
discretion, without basing his ruling upon any specific error
of law, may, under certain circumstances, possess the
authority to grant a new trial, yet we cannot do so,
nor can we exercise the discretion which the district
court might, and in some cases perhaps ought to have, exer-

cised. In cases like the one before us, where all other assignments fail, and the only available assignment is that the evidence does not justify the verdict of the jury, and where the trial court has refused to grant a new trial, all that we are authorized to do is to look into the evidence to ascertain whether there is any substantial evidence in support of every material element which plaintiff is required to establish in order to recover. If there is such evidence, then, so far as we are concerned, the verdict must stand, although in our judgment, if we passed on the facts, the verdict upon the whole evidence should have been to the contrary. Nor can we, under the guise of reviewing an abuse of discretion by the trial court in refusing to grant a new trial upon the ground that the verdict is not supported by the evidence, pass upon the weight of the evidence. What the district judge might, or even should, have done in this regard we may not do for him, simply because he refused to do it.

We have carefully examined the cases cited by appellant's counsel. While the case of *Shelton v. Hecelip,* 167 Ala. 217, 51 South. 937, is in some respects very similar to the case at bar, yet the evidence upon the question of the physician's negligence in that case was not only much more meager than in this case, but it was also much less clear with regard to what caused the injury complained of. Indeed, it is plainly inferable from what the court said in that case that, if the evidence had been as strong in that case as it is in this upon the salient points, the result might, and doubtless would, have been different. In the case of *Pettigrew v. Lewis,* 46 Kan. 78, 26 Pac. 458, there was absolutely no proof of negligence. In the case of *Stern v. Lanng,* 106 La. 738, 31 South., 303, the finding was in favor of the defendant. If in the case at bar the jury had found for the defendant upon the facts, we would have no more difficulty in sustaining the finding that the court had in *Stern v. Lanng.* The other cases cited are readily distinguishable from the facts in the case at bar, and need no further consideration.

Finally, counsel appeals to us with much force that, in

view of the grave consequences which follow from a finding adverse to the appellant, the question of whether the verdict and judgment are right or not should receive careful consideration. All that counsel claims in this regard is cheerfully conceded, but these questions involve matters of fact with which we are powerless to deal when, as in this case, reasonable men would be justified by the evidence in arriving at opposite conclusions.

The judgment is affirmed, with costs.

McCARTY, J., concurs.

STRAUP, J. (concurring).

I concur in the result. I do not concur in all that is said on the question of discretionary powers of trial courts in passing on a motion for a new trial. Much that is said on that question I think is unnecessary and inapplicable to the pretended discretion which appellant claims the trial court abused. In overruling appellant's motion for a new trial, the court observed that the only question for consideration on the motion was one of fact, and stated that, "while the court perceives no material difference in the aspect of the case as presented on the former trial, and is of the same opinion as on that trial, that while the verdict is justified by the evidence, it has not been proven to the satisfaction of the court by a preponderance, and, were the court sitting as a trier of fact, simply because of the failure of preponderance, the court could not find a verdict for the plaintiff." The court further remarked that the verdict must be sustained, if at all, upon the theory that the defendant dropped carbolic acid in plaintiff's eye; that by the testimony of all the experts carbolic acid dropped in the eye would cause excruciating pain; that several days after it was claimed the defendant had dropped the acid in her eye plaintiff's husband "inquired of the defendant if he was sure he had not dropped something in her eye;" that it was argued that the plaintiff, "a woman of heroic nerve," was able to bear the pain without manifesting any immediate signs or indications of pain; that such

theory seemed to have satisfied two juries; and that the court did not feel longer justified in interfering with the verdict. From this it appears that the court was satisfied that the evidence was sufficient to show that the defendant had dropped the acid in plaintiff's eye. The testimony referred to by the Chief Justice amply supports such a finding.

But the trial court expressed some doubt as to such fact because of the inquiry of plaintiff's husband, and because she did not complain of pain at the time the acid came in contact with the eye, notwithstanding she complained of extreme pain fifteen or twenty minutes thereafter. For these reasons the court intimated that, had he tried the case on the facts without a jury, he would have made a finding contrary to that of the jury, on the sole ground of plaintiff's "failure of preponderance" of the evidence. Because of such statements by the court, appellant now urges that the trial court ought to have granted his motion for a new trial, and abused his discretion in refusing it. The trial court being satisfied that the verdict was justified by the evidence did not feel authorized to interfere with it upon the ground only that, had he tried the case on the facts, he would have reached a different conclusion. In that I think the court was right. Whatever legal discretion may rightfully be exercised by the trial court in passing on motions for a new trial, I think it is clear that when the evidence, both in point of law and of fact, is sufficient to justify the verdict, and the trial court is satisfied of such sufficiency, he may not then, in his discretion, set it aside on the sole ground that, had he tried the case on the facts, he would have reached a different conclusion. To hold otherwise is to hold that the court in its discretion may invade the duty to decide by setting aside verdicts until he has found a jury to agree with him.