427 P.2d 736

**Leonard HYLAND, Plaintiff and Respondent,**

v.

**ST. MARK'S HOSPITAL, Defendant
and Appellant.**

No. 10498.

Supreme Court of Utah.

May 4, 1967.

Ray, Quinney & Nebeker, R. M. Child, Salt Lake City, for appellant.

Beaslin, Nygaard, Coke & Vincent, Salt Lake City, for respondent.

CROCKETT, Chief Justice:

Plaintiff, Leonard Hyland, sued for injuries suffered while being catheterized by an orderly in the defendant St. Mark's Hospital. In response to interrogatories a jury answered that the defendant was not negligent and judgment was entered accordingly. Thereafter, pursuant to the plaintiff's motion alternatively for a judgment n. o. v. or a new trial, the court stated that: "Judgment notwithstanding the verdict is granted pursuant to Rule 50(b)" and ordered: "Judgment is hereby entered for the plaintiff and against the defendant on the question of negligence and it is ordered that a new trial be given to determine the amount of damages, if any, which should be paid to the plaintiff."

In order to analyze the propriety of the trial court's order, it should be looked at as to what it directs to be done, rather than putting stress on the particular words used. In effect it does two things, which are severable and which, therefore, should be looked at separately: (1) It orders a new trial; and (2) restricts the new trial to the issue of damages only. It is apparent that this was done by the trial court because as he viewed certain facts which are without essential dispute, he was convinced that there is a much greater likelihood than not that carelessness of defendant's orderly, John Manzanares, caused the plaintiff's injury. As will be seen, such a view is not wholly incompatible with reason.

The plaintiff, Hyland, was in the St. Mark's Hospital recovering from a heart attack. He had not been relieved of urine since he was catheterized without difficulty some 16 hours earlier. The orderly, Manzanares, was using a Foley catheter. It has within its tube a smaller tube, which, on the inserted end of the catheter, has a small balloon. Its purpose is that after the catheter gets into the bladder, the small balloon is inflated with water to hold the catheter in place. The customary procedure is to insert the catheter far enough that there is a return of urine, indicating that it is in the bladder, before the balloon is inflated. The difficulty which would ensue if the balloon is inflated before reaching the bladder is obvious. Nevertheless, that seems to have happened.

As Manzanares was performing this duty, the plaintiff complained of extreme pain, saying that something must be wrong because he had not so suffered on previous occasions. Manzanares testified that he knew both from instructions and previous experience that urine should come out of the catheter when it has entered the bladder. There are two important facts to be noted: that he did not get urine; and that as he proceeded he did feel unusual pressure when he attempted to inflate the balloon. It seems quite inescapable that these facts, together with the plaintiff's outcries of pain, should have warned Manzanares that something was wrong. Despite this,

he went ahead forcing the water pressure into the tube and inflating the balloon until the plaintiff screamed with pain and blood gushed out of the catheter.

The medical testimony was that if catheterization is properly performed no such result should follow. Three doctors, including Drs. Kaplan and Fisher, urologists, gave it as their expert opinion that the plaintiff's injury was caused by inflation of the balloon in the urethra, whereas Dr. Huckleberry, also a urologist, thought it was inflated in the bladder and then forcibly withdrawn into the urethra causing the damage. But even under the latter view the fault could be imputed to Manzanares, because he stated in his deposition (read into the record) that it was he who pulled out the catheter. This is corroborative of what the plaintiff said; and those two were the only ones present when it happened.

From the foregoing it will be seen that it was not entirely without reason for the trial court to take the view that the evidence shows so persuasively that the orderly, Manzanares, was responsible for what happened that a finding exculpating defendant of negligence worked a serious injustice. Further support of that idea is found in the response Manzanares made to a question by the court. Asked whether interference by the plaintiff affected the outcome of the catheterization, he responded that it didn't really have anything to do

with it; that he performed his work just the same as if the patient hadn't made it more difficult.

Notwithstanding the fact that the trial court's ruling does not impress us as wholly unreasonable, out of a desire that a new trial be fair to both sides, we believe that justice would best be served by removing any restriction upon it. There are undoubtedly some instances where limiting a trial to the issue of damages only may be justified, as our rules allow. But courts generally do not look with favor upon such a restriction.[1] The reasons why this is so in personal injury actions are well exemplified in this case.[2] The questions relating to the plaintiff's injury, how it happened, who was at fault, and the pain and injury occasioned thereby, are so intermingled that if there is to be a new trial, in fairness to both parties it should be on all issues.

We have indeed frequently affirmed the importance of trial by jury. However, it must be realized that even a jury is not so sacrosanct as to be beyond the possibility of error. Like other aspects of authority in our system of government under law, it is essential that there be some check against arbitrariness, abuse or mistake. The safeguard against this is the authority of the trial judge who has supervisory control over the proceedings and is charged with the ultimate responsibility of seeing that justice is done. To accomplish that purpose it is essential that his power to grant or deny motions for new trial be recognized.[3] This is necessarily something more than simply to rule as a matter of law that the evidence will or will not support a verdict. The latter would only allow him to judge whether the verdict should be sustained as a matter of law, and would not permit any latitude of discretion.

Consistent with the purpose just discussed, whenever what has transpired in the proceeding is so offensive to the trial court's sense of justice that he believes the desired objective of affording the parties a fair trial has failed, he has both the prerogative and the duty to grant a new trial. This court has always recognized that the trial court has a broad discretion in doing so, and that his ruling thereon should not be overturned unless it appears that his action was arbitrary, or that it clearly transgressed any reasonable bounds of dis-

---

1. See Klafta v. Smith, 17 Utah 2d 65, 404 P.2d 659.
2. See Keogh v. Maulding, 52 Cal.2d 17, 125 P.2d 858; Leipert v. Honold, 39 Cal. 2d 462, 247 P.2d 324; 66 C.J.S. New Trials § 11.

3. James v. Robertson, 39 Utah 414, 117 P. 1068; King v. Union Pacific R. Co., 117 Utah 40, 212 P.2d 692; Stack v. Kearnes, 118 Utah 23, 221 P.2d 594; see also Uptown Appliance & Radio Co. v. Flint, 122 Utah 298, 249 P.2d 826; see discussion in Holmes v. Nelson, 7 Utah 2d 435, 326 P.2d 722.

cretion.[4] This is so well established that it is hardly to be doubted that if the trial court had simply granted a new trial, his ruling would have been affirmed. The fact that he went further and in addition thereto limited the new trial to damages only should not be regarded as nullifying the valid and sustainable part of the order.

For the foregoing reasons we have concluded that under the law as established by our decisions the proper disposition of this case is to remand it for the new trial ordered by the district court, but that the trial should be on all issues. It is so ordered. The parties to bear their own costs.

TUCKETT, J., and CHARLES G. COWLEY, District Judge, concur.

CALLISTER, Justice (dissenting).

In Holland v. Brown[1] this court opined that:

The court must be particularly cautious in granting a judgment n. o. v. in favor of a plaintiff where the jury is not convinced that he has met his burden of proof as to the facts necessary to entitle him to recover. * * *

In Helman v. Sacred Heart Hospital[2] it was stated:

In ruling on a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the party against whom the motion is made, and all material evidence favorable to the contention of the party benefited by the verdict must be taken as true. If there is substantial evidence supporting the verdict of the jury, as distinguished from a mere scintilla of evidence, the verdict must stand. By "substantial evidence" is meant that character of evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed.

The majority opinion does disservice to and disregards the foregoing principle. Either the lower court erred in granting the judgment n. o. v. or it did not. If the former, the jury verdict should stand. If the latter, the lower court's decision should be sustained. To send this case back for a new trial on all issues is an anomaly. The jury has spoken and so has the trial judge. In the situation at hand,[3] the jury and the judge cannot both be wrong or right at the same time—yet, this is what the majority opinion implies. In effect, it holds that the trial court erred in granting the motion

4. See King v. Union Pacific R. Co., supra footnote 3; and see statement in Wellman v. Noble, 12 Utah 2d 350, 366 P.2d 701 and authorities in footnote 5 to that opinion.

1. 15 Utah 2d 422, 394 P.2d 77 (1964).

2. 62 Wash.2d 136, 381 P.2d 605, 96 A.L.R. 2d 1193; see also 2B, Barron & Holtzoff, Fed.Prac. & Proc. § 1075, pp. 381–385.

3. The majority opinion does not base its decision upon any error committed in the trial or in instructions to the jury.

of a judgment n. o. v. but, that the jury verdict was also erroneous. In other words, they were both wrong!

Assuming that the principles of Holland v. Brown, quoted above, still apply, let us apply them to the instant case. Let us view the evidence in the "light most favorable" to the defendant and consider that "all material evidence favorable [to it] must be taken as true." That evidence may be summarized as follows:[4]

The plaintiff's present physical impairment is in the form of acute prostatitis. This condition could be the result of several different causes or factors, such as: (a) the presence of an indwelling catheter for a number of days; (b) enlargement of the median lobe of the prostate gland; (c) infection in the other parts of the urinary tract; (d) infection from another part of the body; and, (e) trauma to the urethra.

Plaintiff, of course, has based his claim on (e) above, contending that the defendant's orderly improperly inserted and ejected the indwelling catheter. The jury could have concluded that plaintiff's condition was the result of factors (a), (b), (c) or (d), in which event a verdict for the defendant would be justified, or, if they found (e) to be the causative factor, but that the plaintiff was responsible for the trauma.[5]

In the instant case, after a careful review of the record, it cannot be said that as a matter of law, there is no reasonable basis in the evidence to justify the verdict of the jury.[6]

However, the majority opinion, contrary to the guidelines set forth in Holland v. Brown[7] and numerous other decisions of this court, views the evidence in a light most favorable to the jury's verdict. It has to do so in order to grant a new trial on all issues. If the jury did not have "substantial evidence" to support its verdict, then the judgment notwithstanding the verdict should be sustained.

The majority opinion contains fine statements regarding the discretion of a trial court in granting or denying motions for new trial. It says nothing about this court's prerogative in that regard.[8] We have before us the question as to whether or not the lower court erred in granting a judgment n. o. v. (not a new trial). It is my

---

4. Most of which was adduced from competent medical witnesses.
5. There was substantial, believable evidence that the plaintiff had compulsively pulled the catheter out.
6. Schow v. Guardstone, 18 Utah 2d 135, 417 P.2d 643 (1966).
7. Footnote 1, supra.

8. It ignores Rule 50(c) (1), U.R.C.P. Under this rule, if the majority is dissatisfied with the n. o. v. judgment, they should remand the case to the trial court for it to rule upon plaintiff's alternate motion for a new trial. Hampton v. Magnolia Towing Co., 338 F.2d 303 (C.A.5th 1964).

**140**

opinion, following the dictates of Holland v. Brown, supra, that it did.

HENRIOD, J., concurs in the dissenting opinion of CALLISTER, J.

ELLETT, J., being disqualified, did not participate herein.