Jay A. LEMBACH, Plaintiff and Appellant,

v.

Barbara A. COX, Defendant and Respondent.

No. 17095.

Supreme Court of Utah.

Dec. 29, 1981.

David E. Leta, Salt Lake City, for Lembach.

Bruce Plenk, Salt Lake City, for Cox.

HOWE, Justice:

Plaintiff-Appellant Jay A. Lembach, father of an illegitimate child which he adopted by acknowledgement under § 78–30–12, U.C.A. (1953), seeks reversal of an amended judgment which awarded custody of the 1½ year old boy to his mother.

The father contends: (1) the trial court applied erroneous legal standards to determine custody; (2) the trial court made findings and conclusions unsupported by the evidence; (3) the application of a maternal presumption was a sexual preference which violated the equal protection clause of the 14th Amendment of the U. S. Constitution; and (4) the trial court's denial of a motion for a new trial was error.

The material facts are the following: The father and mother of the boy never married but resided together at the father's house for approximately two years. The trial court found that during the year after the birth of the boy, the couple had jointly cared for him, but that the mother had taken the primary responsibility. When the parties separated, the mother took the child with her out of state. A few weeks later, she returned and left the boy in the care of his father for a month while she travelled. The father initiated this action. The parties stipulated that pending the trial, they would have joint custody with equal responsibility for the boy's care.

At the trial, expert witnesses testified. One expert advocated joint custody of children where possible, but stated that its success depended upon a willingness to work out such an arrangement and observed that it was unlikely that these two parents could do so. The other expert testified that there were no substantial differences in nurturing or parenting skills between the parents. Both witnesses agreed that the award of custody should be determined from the entire range of factors rather than giving particular weight to economic resources.

The father argued, but the court refused to find, that he was the more stable of the parents, the better provider, had a more flexible attitude and therefore the more appropriate parent to have custody of the boy.

At the time of trial the mother was receiving public assistance. She testified she intended to move out of state to live with her parents and she would personally care for the boy if she were awarded custody. The father was working. He testified that if he were given custody he would have the boy attend a day care center while he worked. The father requested joint custody. The mother opposed it. The court found that joint custody would not serve the best interests of the boy. Rather, it found that the best interests of the child

would be served by maintaining a strong relationship with both parents, but that visitation with the non-custodial parent for lengths of time greater than one month would disrupt the stability needed by a child of his age. Accordingly, the court determined that it was in the best interests of the boy to award custody to the mother and to grant reasonable visitation to the father.

The father moved for a new trial based upon the fact that before the trial the mother had filled out a form for public assistance wherein she had stated that her intention was to reside in Utah rather than leave as she had testified in court. The trial court denied the motion for a new trial but entered an amended judgment and amended findings of fact and conclusions of law, still awarding custody to the mother and granting the father reasonable visitation.

### ERRONEOUS LEGAL STANDARDS

■ The father contends that the trial court applied three erroneous legal standards in awarding custody of the child. First, he asserts the trial court measured the father's fitness for custody by his unwillingness to legitimate the child by marriage and by his insensitivity to the mother. He argues that standards prescribed by § 77–60–12, U.C.A. (1953), which prefer the natural mother of illegitimate children, were applied to him rather than § 30–3–10, U.C.A. (1953), which provides:

In any case of separation of husband and wife having minor children, or whenever a marriage is declared void or dissolved, the court shall make such order for the future care and custody of the minor children as it may deem just and proper. *In determining custody, the court shall consider the best interests of the child and the past conduct and demonstrated moral standards of each of the parties.* [Emphasis added.]

The trial court's findings and conclusions do not support the father's contention. Rather, the record suggests that even though the parties never married, the court employed § 30–3–10, U.C.A. (1953), and treated the boy as a legitimate child. Finding number three of the Amended Findings of Fact states:

Judge Christine M. Durham's Order of December 24, 1979, states that "Plaintiff [father] has adopted the minor child by acknowledgement 'for all intents and purposes' in accordance with § 78–30–12, U.C.A. (1953) and that Plaintiff has a right to custody in accordance with the 'best interests of the child' as shall be determined at the time of trial."

Conclusion of Law number one also speaks in terms of the best interests of the child, making the award of custody based upon those best interests. In view of this, the father's insensitivity to the mother and his failure to legitimate his son by marriage do not appear to be unreasonable considerations of "past conduct and demonstrated moral standards" mandated by § 30–3–10, U.C.A. (1953).

■ Secondly, the father argues, the trial court erroneously applied a presumption that the mother should have custody of the child unless she was unfit and refers us to Conclusion of Law number two which states:

Under case law in the State of Utah and under the common law of this State there is a presumption that a child of tender years should be in the custody of their [sic] mother unless the mother is unfit to care for the child. Absent such a finding, custody should be awarded to the mother of the child. This conclusion is in addition to and is distinct from Conclusion of Law number 1 above.

*Jorgensen v. Jorgensen*, Utah, 599 P.2d 510 (1979), the controlling case, outlines the appropriate legal standard for awarding custody. See also *Henderson v. Henderson*, Utah, 576 P.2d 1289 (1978); *Bingham v. Bingham*, Utah, 575 P.2d 703 (1978); *Smith v. Smith*, Utah, 564 P.2d 307 (1977); *Hyde v. Hyde*, 22 Utah 2d 429, 454 P.2d 884 (1969); *Steiger v. Steiger*, 4 Utah 2d 273, 293 P.2d 418 (1956). In the *Jorgensen* case we confirmed, as § 30–3–10, U.C.A. (1953) mandates, that the best interests of the child

should be given primary consideration in the award of custody. Still, we recognized at *Id.* 511 the "continued vitality of a judicial preference for the mother in child custody matters, all other things being equal," even though the statutory maternal presumption formerly contained in § 30–3–10 was repealed in 1977. See Chap. 122, Laws of Utah 1977.

In that case, the father had adequate employment, was responsible, enjoyed a particularly close relationship with his son who was an older child, and was in all respects competent to care for the boy. The mother, on the other hand, had minimal income, had indiscreetly engaged in two extra-marital sexual relationships with different men, and at the time of trial was continuing to live with one of them. The circumstances preponderated in favor of the father. The best interests of the child were served by awarding custody to him. Therefore the court had no reason to invoke and did not invoke the maternal presumption since the parental circumstances were not equally balanced, i.e., "all other things" were not equal.

Similarly, in the case at bar the trial court gave primary consideration to the best interest of the child, as supported by both Findings of Fact number three and Conclusion of Law number one; and, therefore the court did not need to have invoked any maternal presumption. It appears reasonable to us that after the many facts were considered, the trial court thought the scales tipped in favor of the mother who could give the most personal attention to this 1½ year old boy rather than to the father who could provide money but would have to sacrifice time with the boy. The party which the trial court chose in the boy's best interest was the mother.

The language the court used in Conclusion of Law number two is similar to the language of the statutory presumption which existed in § 30–3–10 prior to 1969 where the mother had to be "immoral, incompetent or [an] otherwise improper person" to be denied custody. *Humphreys v. Humphreys*, Utah, 520 P.2d 193, 194 (1974).

In other words, absent a finding she was unfit, the mother was entitled to custody of the child. That presumption was repealed by Chap. 72, Laws of Utah 1969, and there replaced by the "natural presumption that the mother is best suited to care for young children" which looked more toward the best interests of the child. *Id.* at 194. That language was repealed out of § 30–3–10 in 1977. The pre-1969 presumption was stronger than the later 1977 "natural presumption" and was stronger than today's judicial preference for the mother if all other things are equal. *Jorgensen v. Jorgensen,* supra. We therefore cannot uphold Conclusion number two since it is based upon law which has been repealed. Nonetheless, since the court awarded custody in Conclusion number one based upon the best interests of the child, its employment of the pre-1969 presumption in Conclusion two was harmless error.

■ The third legal standard erroneously applied, argues the father, was the refusal of the trial court to order joint custody unless the parties could negotiate the terms of the arrangement. There is no statutory authority in Utah either permitting or prohibiting a joint custody arrangement. A custody arrangement, joint or otherwise, is within the broad equitable powers of the court. The trial court found, based upon testimony and argument, that a joint custody arrangement is not appropriate for parents who cannot cooperate with each other. While the expert witnesses thought joint custody would be ideal, both also believed it unlikely that it would work under these circumstances. The fact that the mother and father could not negotiate a joint custody arrangement demonstrates the inappropriateness of ordering joint custody. It was not an erroneous application of a legal standard.

### ABUSE OF DISCRETION

■ The father's second major contention is that the trial court made findings and conclusions unsupported by the evidence.

The standard of review in child custody awards is explained in *Jorgensen v. Jorgensen*, supra, at 511–512:

A determination of the "best interests of the child" frequently turns on numerous factors which the trial court is best suited to assess, given its proximity to the parties and the circumstances. Only where the trial court action is so flagrantly unjust as to constitute an abuse of discretion should the appellate forum interpose its own judgment.

It is true that the father in this case is more financially capable of providing for the boy than is the mother. Financial ability, however, is only one of the many factors to consider. See *Nielsen v. Nielsen*, Utah, 620 P.2d 511 (1980), where financial ability was considered an additional factor in light of the environment which could be provided, the critical factor of that case. There were many factors considered by the trial court in this case. The mother had given the primary care to the boy and testified she would continue to personally care for him. She intended to move out of state to be close to her family. The fact that the father may be able to pay to keep the boy in a day care center certainly need not outweigh the mother's desire and ability to nurture and care for her young son personally and to provide close family ties for him. The court's ruling is supported by the evidence. Nothing in the record appears so flagrantly unjust as to constitute an abuse of discretion.

## UNCONSTITUTIONAL SEXUAL PREFERENCE

The custody award in this case was based upon the best interests of the child and no preference or presumption needed to have been employed. Therefore, it is unnecessary for us to consider here the constitutional question of whether a judicial preference for the mother in child custody matters, all other things being equal, *Jorgensen v. Jorgensen*, supra, is a denial of equal protection.

## MOTION FOR NEW TRIAL

■ The father asserts that the denial of his motion for a new trial by the court below was error. The granting of such a motion under Rule 59, Utah Rules of Civil Procedure, is within the discretion of the trial court. The standard, similar to other questions involving an abuse of discretion, is that the trial court's ruling will not be overturned unless the abuse of discretion is clear. In *Hyland v. St. Mark's Hospital*, 19 Utah 2d 134, 427 P.2d 736 (1967), a personal injury action where a new trial was granted, we stated the well established principle as follows, *Id.* at 738:

. . . the trial court has a broad discretion . . . and . . . his ruling . . . should not be overturned unless it appears that his action was arbitrary, or that it clearly transgressed any reasonable bounds of discretion.

■ In the case at bar the father moved for a new trial on the basis of newly discovered evidence claiming prejudice based upon the non-availability of the mother's welfare application at the time of trial. The father, through his counsel, argued that one of the expert witnesses would have more thoroughly questioned the mother in his examination of her and that counsel would have been able to raise credibility questions had the information been available. The father's counsel did make a request for production of the application but never sought to compel it, never moved for a continuance based upon the mother's failure to produce it, and did not explore the subject during cross-examination. The father's counsel could have obtained the same information by propounding interrogatories to the mother. He did not. Further, the mother stated in her affidavit that her testimony at trial was not inconsistent with her statement in the welfare application.

The court entertained the motion along with a motion to amend and partially granted the motion to amend, but denied the motion for a new trial. It appears to have reasonably concluded that the mother spoke no falsehood and that there was no surprise or prejudice to the father. Its

conclusion that there was no basis for a new trial is not a clear transgression of "reasonable bounds of discretion." There is evidence to support it. Its ruling, therefore, will not be overturned.

The judgment below is affirmed. Costs to respondent.

HALL, C. J., and OAKS, J., concur.

MAUGHAN, J., heard the arguments but died before the opinion was filed.

STEWART, Justice (dissenting):

With due respect I am not able to join the majority opinion for the basic reason that fundamental procedural requirements have not been complied with in this case, and it is, therefore, I submit, impossible to know what the proper resolution of this case should be. Custody disputes often raise the most difficult and delicate issues, but that is all the more reason why it is important that the prescribed procedures be complied with.

In this case, the trial court applied a patently erroneous rule of law in its Conclusion of Law number two in ruling that "there is a presumption that a child of tender years should be in the custody of its mother unless the mother is unfit." The majority admits that this standard is improper, but nevertheless holds that the opinion should be sustained because the trial court referred in Conclusion of Law number two to the proper standard, i.e., "the best interest of the child." But there is not a single finding of fact which supports the conclusion that the best interest of the child requires custody to be given the mother. The findings of fact, to the extent that they bear on the issue, simply recite that both the plaintiff and the defendant are fit to have custody of the child; there are no findings of fact which deal with one parent or the other being the better, more nurturing parent. The majority's opinion—apparently in recognition of the obvious void—attempts, improperly, in my judgment, to fill that void by referring to a portion of the transcript where the trial judge chastized the plaintiff for not having married the defendant to legitimate his son by marriage. Although the record is clear that the plaintiff had adopted his son by acknowledgment, and apparently had acted as a father in all respects, the majority nonetheless finds, on its own, that his "insensitivity to the mother" and "his failure to legitimate his son by marriage ... [does] not appear to be unreasonable considerations of 'past conduct and demonstrated moral standards' ...." The trial court did not hold that those propositions determine, or even bear upon, what the "best interests" of the child were, and I think the majority errs in doing so.

In all events, the findings of fact and conclusions of law clearly disclose that it was the erroneous legal standard employed by the trial court which determined the award of custody, and not as the majority would have it, the best interests of the child. Conclusion of Law number two reads as follows:

2. Under case law in the State of Utah and under the common law of this State there is a presumption that a child of tender years should be in the custody of their [sic] mother *unless the mother is unfit.* In this case, no evidence has been presented that the mother is unfit to care for the child. Absent such a finding, custody should be awarded to the mother of the child. This conclusion is in addition to and is distinct from Conclusion of Law number 1 above. [Emphasis added.]

As stated above, there simply is no factual basis disclosed in the findings of fact which supports Conclusion of Law number one, and therefore the custody award must stand or fall on Conclusion number two.

Unfortunately, the only appropriate course of action in this case, as I see it, is to remand the matter for additional factual findings and application of the proper legal standard.