## CUSACK v. LONGAKER.
### No. 179.

Circuit Court of Appeals, Second Circuit.
March 7, 1938.

George F. Thompson, of New York City, for appellant.

John P. Smith, of New York City (Walter G. Evans, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal from a judgment entered upon the verdict of a jury in favor of the defendant. The action was begun in the Supreme Court of Westchester County, N. Y., and on diversity of citizenship was duly removed to the District Court. The plain-

tiff sought damages for personal injuries arising out of an accident which occurred in Chicago, Ill., while he was riding as a guest in an automobile operated by the defendant. Under an Illinois statute quoted in the margin[1], no recovery is permissible unless the accident was caused by "the wilful and wanton misconduct" of the driver of the vehicle and such misconduct contributed to the plaintiff's injury. The assignments of error relate solely to the judge's charge respecting the meaning of the above-quoted statutory phrase.

After reading to the jury the relevant portions of the statute, the judge correctly stated that the principal issue was whether the plaintiff's injury was sustained as a result of the wilful and wanton misconduct of the defendant. He then proceeded to distinguish between "wilful" and "wanton," and, in so doing, stated that "A wilful act is one done knowingly and purposely, with the direct object in view of injuring another." And he refused requests to charge that "wilful misconduct does not contemplate or must not necessarily mean that the defendant intended to injure the plaintiff on that night"; that ill will is not a necessary element to establish the charge of wilful misconduct; and that, if the acts were committed under circumstances exhibiting a reckless disregard for the safety of others, it would be wilful misconduct. From all this we think that the jury must have been given the impression that in order to return a verdict for the plaintiff they had to find that the defendant intended to injure him. This is surely more than the statute requires; only the misconduct need be "wilful and wanton," the resulting injury need not be. Thus, in Seiffe v. Seiffe, 267 Ill. App. 23, it was held that a judgment for a passenger might be sustained where the accident resulted from excessive speed (78 to 80 miles an hour), the opinion explaining that gross negligence may justify the presumption of wilfulness and wantonness when it is such as to imply a disregard for

consequences. See, also, Reed v. Zellers, 273 Ill.App. 18; Gannon v. Kiel, 252 Ill. App. 550. We doubt if it is helpful to attempt to define "wilful" and "wanton" separately in a charge to the jury. The phrase as a whole is rhetorical and implies no more than excessively reprehensible conduct; such conduct as justifies an inference of consciousness that injury may probably result from the act done and a reckless disregard of consequences. Although the decisions of the Illinois Appellate Courts are not binding authorities, they accord with decisions of the Supreme Court of Illinois construing "wilful and wanton" in other connections (Jeneary v. Chicago & Interurban Traction Co., 306 Ill. 392, 398, 138 N.E. 203; Walldren Express & Van Co. v. Krug, 291 Ill. 472, 478, 126 N.E. 97), and we believe they have correctly construed the statutory phrase in question. Hence, we are of opinion that the charge was wrong.

It remains to consider whether it was so prejudicial as to require reversal, for the appellee may support a judgment by anything in the record, even though it involve insistence upon a contention which the District Court rejected. Indiana Farmer's, etc., Co. v. Prairie Farmer Pub. Co., 293 U.S. 268, 281, 55 S.Ct. 182, 186, 79 L.Ed. 356; In re Schwartz, 2 Cir., 89 F.2d 172, 173; Dean v. Davis, 4 Cir., 212 F. 88, 89. At the close of the evidence the defendant moved for dismissal on the ground that the evidence failed to show wilful and wanton misconduct on the part of the defendant. If this contention was well taken, the judgment should be affirmed regardless of error in the charge.

This requires an examination of the testimony. On March 16, 1932, the plaintiff, who was the general sales manager of the Dry Ice Corporation of America, met in Chicago with several of the corporation's sales representatives, including the defendant, who came on for the meeting from Kansas City. Mr. Longaker's parents resided in a suburb of Chicago and, after dining

---

[1] "An Act in relation to motor vehicles," chapter 121, § 243(b), Smith-Hurd Ill.Rev.Stat., Smith-Hurd Stats. c. 95½, § 58(b) provides:

"(b) Provided, however, that no person riding in a motor vehicle as a guest, without payment for such ride, nor his personal representative in the event of the death of such guest, shall have a cause of action for damages against the driver or operator of such motor vehicle or its owner or his employee or agent for injury, death or loss, in case of accident, unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle or its owner or his employee or agent and unless such wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought."

at their home, he borrowed his father's automobile and drove to a restaurant on the north side of the city, where Mr. Cusack and the others were to continue their business discussions after dinner. When the meeting broke up shortly after midnight, Mr. Longaker offered to drive Mr. Cusack to his hotel. They were the only occupants of the Longaker car. On the way they stopped at the apartment of the Chicago sales representative in the Shoreham Hotel and, after remaining there some half hour, continued south toward Mr. Cusack's hotel. The accident occurred about 1 o'clock in the morning at the intersection of Burton place and Dearborn street, the former street running east and west, the latter north and south. On the right-hand side of Burton place as one proceeds west—the direction in which the Longaker car was going—and about 20 feet from the corner, was a sign bearing the word "Stop" above, and the words "Through Street" below. The letters were not illuminated but the sign had a red reflector to catch the rays of the headlights of a car approaching from the east. There was no testimony whether Longaker was using bright headlights. He testified that usually he drove in the city with dimmed lights. Mr. Cusack, who was sitting to the right of the driver, noticed this sign and at almost the same instant observed a northbound automobile coming along Dearborn street. He had only time to shout "Look out" before the crash. The left front part of the Longaker car collided with the right front part of the other car; the Longaker car was overturned and the other car was jammed against a hydrant and telegraph pole at the northwest corner of the intersecting streets. Mr. Longaker testified that he did not see the "Stop" sign nor know it was there; he admitted that he passed it at a speed between 20 and 30 miles an hour. When he saw the other car, he attempted to swing to the right and believes that he applied the brakes, but collision was then unavoidable. Mr. Cusack's testimony contains no suggestion that Longaker did see the sign; he estimated the speed in passing it at 35 miles an hour, since he thought it was about the same as the speed of which he had previously complained at a time when he noticed that the speedometer indicated 35 miles. The jury would, of course, be entitled to accept Cusack's estimate rather than Longaker's. Longaker also testified that he had had several drinks that evening but none within an hour and a half of the time of the accident.

There is no suggestion whatever in the testimony that he was under the influence of liquor.

If negligence were all that the plaintiff were required to prove, he undoubtedly made a case for the jury; but we do not think that Longaker's failure to see the sign and his maintenance of a speed of 35 miles in crossing a street at 1 o'clock in the morning is evidence of negligence so gross as to justify a finding of "wilful and wanton misconduct." As to the traffic conditions to be expected at that hour, Longaker testified that after leaving the Shoreham there was "just about the usual amount of traffic there would be in Chicago at 1:30 or 2 o'clock in the morning. I mean it is not as heavy as it is at noon, but a moderate amount of traffic, as I recall." This is too general to mean anything to a jury as to the amount of traffic to be expected on Dearborn street at its intersection with Burton place. Cusack said merely that he saw no other cars around there at the time of the collision. On this record we think the case should not have been left to the jury. Consequently the judgment is affirmed.