## STACK v. KEARNES.

No. 7387. Decided August 9, 1950. (221 P. 2d 594)
Rehearing denied November 10, 1950.

See 66 C. J. S., New Trial, Sec. 70. Guest's suit against driver of automobile as based on wilful conduct of operator, 131 A. L. R. 886. See, also, 5 Am. Jur, 626.

*Arthur H. Nielsen,* Salt Lake City, for appellant.

*A. W. Sandack,* Salt Lake City, for respondent.

WOLFE, Justice.

The appellant, defendant below, prosecutes this appeal from a judgment entered against him in an action commenced by the respondent, plaintiff below, to recover damages for personal injuries which he allegedly sustained when an automobile being operated by the appellant and in which the respondent was a guest passenger, overturned on a highway curve in Salt Lake County, Utah. The parties

will hereinafter be referred to as they appeared in the lower court. The case has been tried twice. At the first trial, the jury returned a verdict of "no cause of action" against the plaintiff. Upon motion of the plaintiff, the trial court granted a new trial which resulted in the jury returning a verdict for the plaintiff in the amount of $1859.34. The sole assignment of error made by the defendant is that the lower court abused its discretion in granting a new trial.

Taking the evidence most favorable to the plaintiff, it appears that the plaintiff and his wife, the defendant and his lady companion, and several of their friends were social guests at the home of Mr. and Mrs. Jerry Johnson on East South Temple Street in Salt Lake City, Utah, in the early morning hours of October 12, 1947. Soon after 1:30 a. m., the plaintiff borrowed an automobile from one of the guests, and with his wife, left the Johnson home to pick up their baby who was being cared for by the plaintiff's mother. After picking up the baby, the plaintiff drove his wife and child to their home and then returned to the Johnson home with the borrowed automobile. Shortly after his return to the Johnson home, the party disbanded and two of the guests, Mrs. Kay Bracken and Mrs. Jane Naisbitt (who was then Miss Jane Potts), requested the defendant to drive them to their homes. Mrs. Johnson offered to drive the plaintiff to his home which was only a few blocks away, but he told her that he would ride home with the defendant. Thereupon the four got into the defendant's automobile and left the Johnson residence. The defendant asked the plaintiff if it would be all right with him if the women were driven home first, and the plaintiff agreed.

Enroute to the home of Mrs. Naisbitt in Holladay, a suburb of Salt Lake City, the plaintiff testified that the defendant "started up fast" as he turned onto Fifth South

Street from the highway leading out of Fort Douglas, prompting Mrs. Bracken to remark to the defendant to

"take it easy" as she had a little girl at home and to which remark the plaintiff commented, "Yes, and I have got a little boy, too."

The plaintiff further testified that the defendant reduced his speed after the above remarks were made and that he remembered nothing else about the defendant's manner of driving until they were proceeding south on Twenty-third East Street approaching Holladay. At this point the plaintiff claims the defendant was driving "pretty fast" and as the car went over a dip in the road, it seemed that the defendant temporarily lost control of the car. The plaintiff noticed that Mrs. Naisbitt was nervous and so he requested the defendant to slow down and told Mrs. Naisbitt not to be nervous. Again the defendant reduced his speed. Mrs. Naisbitt corroborated the plaintiff's testimony in regard to this incident and testified further that she observed the speedometer registered eighty miles per hour as the car went over the dip. Mrs. Bracken; too, recalled on the witness stand that the plaintiff had requested the defendant to slow down after they went over the dip.

After discharging Mrs. Naisbitt at her home, the defendant, with Mrs. Bracken and the plaintiff, proceeded back to Salt Lake City along Holladay Boulevard. The defendant drove at a "moderate" speed until he had passed through the business district of Holladay, but thereafter he continually picked up speed as he approached a curve to the left in Holladay Boulevard where it intersects with 45th South Street. The plaintiff testified that the car was going over fifty-five miles per hour and that the defendant made no attempt to slow down as he approached the curve; that he accelerated and braked the car at the same time as the car started around the curve; that the car skidded around the curve, the back wheels going off the oiled hard surface and the car nearly striking a utility pole on the shoulder of the highway; that the defendant lost a little speed in

making the turn so that he was traveling about fifty miles per hour after completing the curve; that the plaintiff was alarmed and told the defendant "we are not in that big a hurry to get home, Pat; slow down!" and that the defendant "laughed off" the plaintiff's remark and "poured it on more" as he approached another curve in the highway about 1100 feet away from the first curve. This second curve is to the right. According to the plaintiff, the defendant approached the second curve at a speed between fifty-five and sixty miles per hour; the defendant did not endeavor to slow the car down but again accelerated and braked it at the same time; the car swerved sidewards across the road, the rear of the car narrowly missing a row of hedges on the extreme left shoulder of the road and then went out of control, swerving over to the other (right) side of the road, skidding sidewards, finally hitting a street marker and then turning over. The defendant denied accelerating and braking the automobile at the same time as it proceeded around the curves, but maintained that the highway was wet and as he was rounding the second curve at a speed not in excess of forty-five miles per hour, the rear wheels suddenly slid off the hard surface of the highway onto the left soft shoulder.

An officer who investigated the accident shortly after it occurred, refreshing his memory from an accident report which he and another investigating officer had made, testified that the car operated by the defendant apparently traveled between 34 and 41 feet from the point where it left the hard surface of the highway on the second curve over to the soft shoulder on the left side of the highway; along that shoulder for sixty feet; then cut across the highway twenty-eight feet to the opposite (right) shoulder; along that shoulder for eighty-four feet shearing off a street marker post, striking a ditch and turning over. The officer testified that while it had been raining the evening before, the hard surface of the road was dry but the shoul-

ders were damp. It is undisputed that the highway on the approach to the second curve was lighted and that there was a street light on the second curve. There were also warning signs on the highway indicating the approach to the two curves. The hard surface of the highway is twenty feet wide and the shoulders on each side are six feet wide. The defendant admitted being familiar with the highway, having driven over it numerous times before.

Section 57—11—7, Utah Code Annotated 1943, relieves the owner or driver or person responsible for the operation of a vehicle upon the highways of this state from any liability to a guest passenger except where injury to or death of a guest proximately results from the intoxication or willful misconduct of the owner, driver or person responsible for the operation of the vehicle. The plaintiff in his complaint alleged that the defendant was guilty of willful misconduct in that he (1) drove at an excessive rate of speed, (2) failed to keep the car under control, and (3) failed to keep a proper lookout ahead.

As heretofore mentioned, upon the first trial below the jury returned a verdict of "no cause of action." The plaintiff thereupon moved for a new trial upon the following grounds: (1) insufficiency of the evidence to justify the verdict, (2) that the verdict is against the law, (3) errors in law occurring at the trial and excepted to by the plaintiff, and (4) that there has been such a plain disregard by the jury of the instructions of the court and the evidence in the case as to satisfy the court that the verdict was rendered through a misapprehension of such instructions or under the influence of passion and prejudice. The trial court granted the plaintiff's motion and ordered a new trial, but did not specify upon which ground or grounds it was basing its order. Counsel for the defendant in his brief states that the ground upon which the plaintiff relied upon in his argument to the trial court and which apparently influenced the court in reaching its conclusion was that the evidence

was insufficient to justify the verdict and such verdict was therefore contrary to the law. Counsel for the plaintiff deny that the court based its decision granting a new trial on any one ground and assert that the trial judge orally stated that he was not basing his decision on any one ground.

Assuming that the trial court granted the new trial on the ground that the evidence was insufficient to justify the verdict, as contended by the defendant, the court did not abuse its discretion in so doing. In the recent case of *King* v. *Union Pacific Railroad Co.*, 117 Utah 40, 212 P. 2d 692, we had occasion to determine the breadth of a trial court's discretion in granting a new trial upon that ground. After reviewing numerous cases from California and Oklahoma, as well as former decisions of this Court, in which trial courts had granted new trials upon the aforementioned ground, we held that where there appears in the record competent evidence which would support a verdict in favor of the party moving for a new trial, there is no abuse of discretion on the part of the trial court in granting a new trial upon that ground. An examination of the evidence in the instant case convinces us that the jury could have reasonably found the defendant guilty of "willful misconduct."

The trial court in its instruction No. 7 defined willful misconduct as

"the intentional doing of an act or intentional omitting or failing to do an act, with knowledge that serious injury is a probable and not merely a possible result, or the intentional doing of an act with wanton and reckless disregard of the possible consequences. It involves deliberate intentional or wanton conduct in doing or omitting to do an act with knowledge or appreciation that injury is likely to result therefrom."

The jury was further instructed in instruction No. 6 that

"willful misconduct connotes a greater wrongdoing than mere negligence or even gross negligence. It includes a conscious or intentional violation of definite law or rule of conduct with the knowledge of the peril to be apprehended from such act or failure to act."

There is no dispute that the highway upon which the accident occurred was lighted and familiar to the defendant. He admitted seeing the road signs marking the approach to the two curves. The road was narrow, and damp on the shoulders, at least, from recent rain. Yet, according to the plaintiff, the defendant attempted to negotiate the first curve at a speed between fifty-five and sixty m. p. h. while he accelerated and braked the automobile at the same time, resulting in the automobile skidding off the hard surface of the highway and narrowly missing a utility pole on the shoulder of the highway. Notwithstanding this near mishap and the plaintiff's request that he proceed more cautiously, which the defendant "laughed off," the latter accelerated the automobile to regain lost speed as he neared the second curve in the highway less than a quarter of a mile away. As the defendant attempted to negotiate the second curve, the plaintiff testified, he again was traveling at a speed between fifty-five and sixty m. p. h. and again accelerated and braked the automobile at the same time. The plaintiff characterized the defendant's manner of driving as "stunt driving" because accelerating and braking an automobile at the same time when driving around curves, he testified, causes the rear wheels to spin and the automobile to hug the road. There was evidence that the defendant on the trip out to Holladay was perturbed because his lady companion whom he escorted to the party at the Johnson home, had left the party with other guests, without him. Certainly in view of all the evidence the jury could have found under instruction No. 7 that the defendant in attempting to negotiate the second curve in the manner testified to by the plaintiff, was guilty of

"the intentional doing of an act * * *with knowledge that serious injury is a probable and not merely a possible result, or the intentional doing of an act with wanton and reckless disregard of the possible consequences,"

and also that the defendant was guilty of a "greater wrong-

doing than mere negligence or even gross negligence." While as pointed out by the defendant, much of the plaintiff's testimony in regard to the defendant's manner of driving was uncorroborated, there was nothing about the plaintiff's testimony which made it unworthy of belief. From the course taken by the automobile after it left the hard-surface of the highway in attempting to negotiate the second curve, the jury might well infer that the defendant was driving much too fast for existing conditions.

The defendant urges that even if the jury could have reasonably found him guilty of willful misconduct, the plaintiff assumed any risk there may have been by not timely protesting the defendant's manner of driving and advising him to proceed more cautiously. The defendant points out that notwithstanding the fact that he drove at an excessive rate of speed at least on part of the trip out to Mrs. Naisbitt's home in Holladay, the plaintiff voluntarily chose to ride back to Salt Lake City with him but did not mention anything to him in regard to his manner of driving and that although the defendant commenced to drive at an excessive rate of speed after leaving the Holladay business district, the plaintiff did not request him to drive more carefully until after the automobile had skidded off the hard surface around the first curve. While it is true as the defendant contends, that a guest is not without responsibility while riding in an automobile, we cannot say as a matter of law that the plaintiff here failed to exercise reasonable care for his own safety. On the trip out to Mrs. Naisbitt's home the plaintiff twice requested the defendant to reduce his speed which the defendant accordingly did. This was the first time that the plaintiff had ridden in an automobile driven by the defendant. Certainly when the automobile reached Mrs. Naisbitt's home there was no reason to believe that the defendant would not drive properly on the way back to Salt Lake City. It was only on the return trip when the automobile skidded

around the first curve in the highway and narrowly missed a utility pole that the plaintiff claims to have become alarmed about his personal safety. He thereupon told the defendant to slow down again and told him that he was not in "that big a hurry to get home." There was no opportunity for the plaintiff to get out of the automobile after it became evident to him that the defendant did not intend to heed his request as he had done before. Certainly there was competent evidence which would allow a jury to find that the plaintiff had not assumed the risk of the defendant's manner of driving.

The judgment appealed from is affirmed. Costs to the respondent.

PRATT, C. J., and WADE, LATIMER and McDON-OUGH, J.J., concur.