**326 P.2d 722**

**Douglas HOLMES, a minor, by Howard Holmes, as guardian ad litem, Plaintiff and Respondent,**

**v.**

**J. Enos NELSON, Defendant and Appellant.**

**No. 8726.**

Supreme Court of Utah.

June 13, 1958.

Cannon & Hanson, Salt Lake City, for appellant.

Patterson & Kunz, Ogden, for respondent.

WORTHEN, Justice.

Action was brought by Douglas Holmes, a minor, through his guardian, to recover damages for injuries sustained on the 11th day of July, 1955, when plaintiff was struck by an automobile driven by defendant. The jury returned a verdict of no cause of action.

A motion for a new trial was filed by plaintiff's attorney, assigning all seven grounds specified in Rule 59(a).

Thereafter, and on June 7, 1957, the court entered a minute order which read:

"Motion for new trial carefully considered and hereby granted on the grounds that the verdict is against a clear preponderance of the evidence."

On June 11, 1957, the trial court made its order as follows:

"It is hereby ordered that the verdict herein and the judgment entered thereon on the 23rd day of February, 1957, be and they are hereby set aside and vacated on the ground of insufficiency of the evidence to justify the verdict, that the verdict was against the law, and error in law."

Defendant filed a petition for interlocutory appeal from the order granting a new trial, which petition we granted.

The question before us is whether or not the trial judge was warranted in concluding that the evidence was insufficient to justify the verdict.

Both defendant and plaintiff have considered the case as though the court based its ruling alone on the sixth subdivision of the rule, insufficiency of the evidence to sustain the verdict. We therefore shall not consider any other ground.

It is not necessary to comment on the case of King v. Union Pac. R. Co.,[1] which went further than we are required to go in this case. Here we are not confronted with evidence that is equally convincing in its weight. In this case the demand of Rule 59(a) is fully satisfied—the evidence is insufficient to sustain the verdict.

The accident occurred about 8:20 p. m. on 800 West Street in Woods Cross, which street runs north and south in front of and east of the home of plaintiff's parents. The oiled surface of the highway is approximately 38 feet 6 inches wide. The shoulders on each side are approximately 10 to 12 feet wide. The west lane of traffic of said oiled highway is 22 feet 5 inches wide, and the east lane of traffic is 16 feet 3 inches wide. The point of impact was approximately 4 feet 6 inches into the east lane of traffic. The speed limit

1. 117 Utah 40, 212 P.2d 692.

was 30 miles per hour. Defendant was traveling northerly with his wife at a speed of about 25 m. p. h. with his headlights on. (Defendant's wife warned him when 300 feet from the point of impact of the presence of children.) Defendant saw the children himself when he was 200 feet south of where the child was struck. A car approached from the north and defendant observed the children move back to permit the southbound car to pass. Defendant's car and the southbound car passed at a point about 100 to 125 feet south of the point of impact.

Defendant testified that when he observed the children about 200 feet to the north he removed his foot from the gas pedal; that he did not then apply the brakes and that the removal of his foot from the gas pedal did not appreciably slow him down because of a slight decline toward the north. Defendant testified that he did nothing except remove his foot from the accelerator to safeguard the children until he saw plaintiff dart into the street when defendant was about 75 feet from the point of impact. He did not slow down any, and did not put his foot onto the brake pedal to enable him to stop more quickly. Defendant did not remember if he sounded his horn.

When defendant was about 75 feet south of the point of impact, he saw the plaintiff, a three and one-half year old child, run into the street from the sidewalk west of the street.

Defendant testified that there was nothing wrong with his brakes.

There is conflict in the evidence as to the presence of gravel on the road and the temperature at the time, both of which have a direct bearing on the coefficient of function of the road surface. The evidence is likewise conflicting as to whether the road was dry or wet. Under defendant's testimony he observed the children at such a distance that he was able to take reasonable precautions. This failure to take such precautions, if there was such a failure, could and probably would spell negligence.

Under examination by the court the defendant testified:

"The Court: After this car passed you going the other way you saw the child. Then where was the child when you first saw it after the car passed you?

"A. The child was coming off the sidewalk north of the Holmes' driveway.

"The Court: He was how far off the sidewalk at that time?

"A. Off the sidewalk, oh—directly off the road probably 10 or 12 feet.

"The Court: 10 or 12 feet off the sidewalk or off the road?

"A. Off the road. He was just leaving the sidewalk when I observed him the first time.

"The Court: How far would he have to go from there to where you hit him?

"A. Oh, about 30 feet, I should say. I never measured it.

"The Court: How far away were you when you saw this little boy?

"A. I was approximately 75 feet.

"The Court: And the little boy would be how far, 30 feet?

"A. Oh something about that distance."

The distances testified to disclose that the child was obliged to travel 36 feet 9 inches while defendant was traveling 75 feet.

We are of the opinion that this accident never should have happened; it was preventable. A careful review of the evidence leads us to the conclusion that defendant either did not see this child when he said he did, or was not going as slowly as he claimed he was, or that he failed to do everything reasonably possible to avoid striking plaintiff by bringing his car to a stop as soon as possible or by turning to the right.

Defendant laid down 52½ feet of skidmarks. From this must be subtracted the length of the wheelbase of the car, which figure was not given by any witness. There is also an unexplained three-foot break in the skidmarks. To this must be added the length of the wheelbase of the car. This break in the skidmarks would indicate that defendant failed to keep his brake continuously depressed after applying the same.

Defendant's own expert witness testified that even on a wet road with gravel on the surface, defendant should have been able to stop within a distance of 65 feet after observing the danger, or 10 feet short of the point of impact. Plaintiff's witnesses testified that the road was dry and free from gravel, and that the road showed a coefficient of friction of 80% at a temperature of 43 degrees Fahrenheit. Defendant testified that the night was hot; however, defendant's wife testified that she was given a sweater to throw over her shoulders after the accident. Defendant was driving a new 1955 Ford Station Wagon with four wheel brakes.

At 25 miles per hour defendant should have stopped within 33 feet of skidmarks with a coefficient of friction of 65% and all the evidence indicates a coefficient equal to or greater than 65%. The normal reaction time at 25 m. p. h. is 27 feet. The physical facts cannot be reconciled with due care or with a speed of 25 m. p. h. or less.

It appears that defendant had plenty of room to turn to the right and miss the child. Had he depressed his brakes continuously after they were applied, he would have stopped short of the plaintiff, provided his speed was not more than 25 m. p. h. If his speed were 25 m. p. h. or in excess of 25 m. p. h., he would have missed the child had he not applied his brakes.

We are of the opinion that the trial court committed no error in granting the new trial.

Affirmed. Costs to respondent.

McDONOUGH, C. J., concurs in the result.

CROCKETT, Justice (concurring).

I concur on the ground shown in the main opinion by Justice Worthen: that there was ample evidence to support a verdict for the plaintiff, and although the evidence is such that the jury could reasonably have refused to so find, under our rule, as I understand it, it was within the discretion of the trial court to grant him a new trial. As to his power in that regard, I deem it meet to make some comments.

Attempting to give expression to the extent of the trial court's discretion in granting new trials is fraught with difficulty. It is stated variously, ranging between two extremes: on the one hand, that the trial judge is an active participant in trying the facts and has the prerogative of setting aside a verdict which does not conform to his views; on the other, that the trial court should scrupulously keep hands off the fact-finding function which is the exclusive prerogative of the jury and should never interfere unless the evidence is such that he is required to do so as a matter of law.

The former point of view is reflected in Burke Greis Co. v. Ballard.[1] " * * * It is an unyielding and obligatory duty of the trial court to carefully weigh the entire judicial proceedings, * * * and, unless the verdict of the jury meets the responsive and affirmative approval and conscience of the court, * * * the same should be set aside and a new trial granted." Under this point of view the trial judge entrusts little to the jury except the privilege of seeing if they can guess what he thinks is right. This is sometimes referred to as the "thirteenth juror" concept: In it the judge has the all important veto power whenever the verdict of the jury does not comport with his views. It is readily seen that if the trial judge follows such a pattern and will nullify the verdict, or a series of verdicts, until one is rendered which reflects his own judgment, in the hands of a strong-minded

1. 200 Okl. 341, 193 P.2d 582, 585.

judge the vaunted right of trial by jury would be but a delusion and would afford no sanctuary from the will of officialdom for the aggrieved seeking justice, as trial by jury is purposed to do.

The other point of view, that the court should exercise extreme forbearance from interfering with jury verdicts is found in Jensen v. Denver & R. G. R. Co.,[2] "A court, vacating a verdict and granting a new trial by merely setting up his opinion or judgment against that of the jury, but usurps judicial power and prostitutes the constitutional [right of] trial by jury." This seems to imply that the court should never disturb a verdict where it is sustainable as a matter of law. A modification of this restrictive view is that a new trial should not be granted where doing so goes against the weight of the evidence.[3] With that idea I could agree if the weight of the evidence could be determined with the exactness with which we weigh beans or corn. But the testimony of witnesses is unfortunately not susceptible of any such precise measurement. The disparate views of the same evidence taken by jurors, trial and appellate judges are sometimes surprising, even bewildering. Witness the instant case: the jury found for the de-

fendant; the trial judge disagreed, thinking strongly that the verdict was against the preponderance of the evidence; four judges of this court appear to agree with him; whereas, our learned colleague, Justice HENRIOD, agrees with the jury.

It seems likely that, as is often the case, the most practical and satisfactory policy to follow is to be found somewhere in the mean between the extremes. This is about what is reflected in the prior decisions of this court. They reflect the sound principle that the matter should rest pretty much within the sound discretion and good conscience of the trial judge.[4] Supporting this view is the fact that Rule 59(a), giving the court power to grant new trials for insufficiency of the evidence, must import something more than the mere authority to do so when the proof is so lacking that there should have been a directed verdict. In the latter instance it is the court's imperative duty not only to set aside the verdict, but to dismiss the action. Therefore, if any meaning is to be given to the provision that a new trial may be granted for insufficiency of the evidence, it must mean something other than the obvious duty just referred to, i. e., it must repose some discretion in the trial court to grant

2. 44 Utah 100, 138 P. 1185, 1192.
3. See Strode v. Strode, 194 Ky. 665, 240 S.W. 368, 27 A.L.R. 313.
4. James v. Robertson, 39 Utah 414, 117 P. 1068; King v. Union Pac. R. Co., 117 Utah 40, 212 P.2d 692; Stack v. Kearnes, 118 Utah 237, 221 P.2d 594; see, also, Uptown Appliance & Radio Co. v. Flint, 122 Utah 298, 249 P.2d 826.

new trials for insufficiency of the evidence to sustain the verdict, even where there is more than the amount necessary to make out a prima facie case.

If the trial court is to fulfill his function of maintaining general supervision over litigation to see that justice is done, it is necessary that he have the power to set aside verdicts and grant new trials when that objective is not served. But such prerogative should be exercised with caution and forbearance consistent with his important and imperative duty to safeguard the right of trial by jury.[5] The verdict, when supported by substantial evidence, should be regarded as presumptively correct and should not be interfered with merely because the judge might disagree with the result. The prerogative should only be exercised when, in the view of the trial court, it seems clear that the jury has misapplied or failed to take into account proven facts; or misunderstood or disregarded the law; or made findings clearly against the weight of the evidence so that the verdict is offensive to his sense of justice to the extent that he cannot in good conscience permit it to stand.

It is appreciated that such a test has a high degree of subjective content for the trial judge and that this sometimes makes it difficult for a reviewing court to determine whether he abused his discretion. Due to the considerations set forth above, and the advantaged position the trial court occupies with respect to the trial, the prior decisions of this court have been uniformly to the effect that the trial court has a broad discretion in ruling on motions for a new trial and that his action will not be disturbed in the absence of plain abuse thereof.

WADE, J., concurs in the views expressed in the opinion of Mr. Justice CROCKETT.

HENRIOD, Justice (dissenting).

I dissent, and in doing so respectfully suggest that the main opinion has reported mostly the facts in favor of the result it reaches and has engaged in an argument with itself in order to justify its conclusion.

A fair, and I believe accurate, abstract of the facts which are uncontradicted, which are not speculative and which represent the really substantial competent evidence introduced are as follows: At dusk, after sunset, defendant, traveling northerly with his wife at between 22–25 m. p. h., car lights burning, saw some children on the opposite side of the road about 200 feet ahead. Thereupon he removed his foot

5. See Stickle v. Union Pac. R. Co., 122 Utah 477, 251 P.2d 867.

from the gas pedal and *slowed down slightly*. He observed a car approaching ahead and saw some children move away from the road when it passed them. He then passed the car about 100 feet from the site of an ensuing accident. *Thereafter*, at an estimated 75 feet, defendant saw plaintiff, who proved to be a 3½ year old child, *dart into the street* from the sidewalk *on the opposite side of the highway*. *Immediately* defendant applied his brakes and, except for an undetermined 3-foot break in the skidmarks, skidded his car the entire remaining distance, but too late to avoid hitting the child with the *left front fender and headlight*. He came to a full stop within 5 or 6 feet beyond the impact, alighted and began assisting the little boy. Expert witnesses hypothetically agreed that one traveling at 25 m. p. h. could have stopped 10 feet short of the accident, assuming the child was seen at 75 feet, and assuming a normal reaction time and average normal friction and braking facilities.

It is impossible for this writer to understand how, under such circumstances, the trial court could say that the jury's verdict in favor of defendant was "against the clear preponderance of the evidence." To so conclude under the uncontroverted facts of this case would be tantamount, in my opinion, to adjudging a motorist negligent as a matter of law who, lawfully traveling in a posted 20 m. p. h. school zone, on the side of the road nearest the school, strikes a child who suddenly and without warning, darted into the path of the motorist who saw the child 75 feet back and immediately applied his brakes, being unable to stop within time. It seems to me that the conclusion reached in the main opinion does violence to the reasonable, prudent man concept in negligence cases, declares that a jury of reasonable persons could arrive at no other conclusion than a finding that there was negligence under the circumstances mentioned, places a premium on the conclusion of one individual who could, in a given case, render impotent a genuine and most reasonable conclusion arrived at by a jury of our neighbors and lays undue emphasis on split-second calculations indulged in hypothetical questions based on conjecture.

The main opinion arrives at its conclusion at least partially, by considering evidence not introduced at the trial and seems to admit that it does so when it says that "From this must be subtracted the length of the wheelbase of the car, *which figure was not given by any witness*." It then indulges in a bit of conjecture when it says, "This break in the skidmarks would indicate that defendant failed to keep his brake continuously depressed after applying the same." It might indicate something else, too, but it is difficult to understand what place such conjecture has in the decision here.

It seems obvious to this writer that the trial court acted in a most arbitrary manner in granting the motion for a new trial. He had theretofore committed himself to a belief that the jury's verdict was correct. After the jury was discharged, the foreman and another venireman approached him, and the following conversation took place:

"The Court: Did the six people who signed this verdict sign the verdict because they feel the man was not negligent?

"Jury Foreman: That's right.

"The Court: Or because they felt that the damages were nominal?

"Jury Foreman: No, because he was not guilty of negligence.

"The Court: Is that the opinion of the six that signed?

"Jury Foreman: Yes. * * *

"The Court: There were some of them that would have liked to have awarded a verdict for specials only?

"Jury Foreman: They felt the man had a moral obligation.

"The Court: But not a legal obligation?

"Jury Foreman: Not a legal obligation. In other words, they felt he was not negligent in his actions, but that he did have a moral obligation. That was the question the jury wanted to ask you that we were not permitted to ask.

"The Court: If that is their opinion, *the verdict is correct.* Is there further enquiries of the foreman of the jury?

"Mr. Kunz: Mr. Beazer would like to have a question here.

"Mr. Beazer: That was my question. * * *

"The Court: Was there ever six of them who felt that Mr. Nelson was negligent?

"Mr. Beazer: No.

"The Court: *Your verdict is correct.* It may be filed."

It will be seen, therefore, that immediately after the verdict was entered, on *February 23, 1957,* the trial court, having the testimony and evidence fresh in his mind, nonetheless said that the verdict was correct. A motion for new trial was filed on *March 4, 1957,* and on *June 11, 1957,* almost four months later, it was granted. This motion was granted, it would appear, without the trial court having the benefit of any transcript of the evidence, since the transcript, according to the court reporter's certificate, was not completed until *September 9, 1957,* three months after the order was entered granting a new trial.

Sending this case back for a new trial, saying that "this accident never should have

444

happened; it was preventable," is a waste of time, since it is obvious that if there is another trial and the jury again finds no negligence, all that the plaintiff need do is to appeal again to this court, and, under the decision here, it would have to be reversed, and another trial ordered. This could go on ad infinitum until finally a jury would hold for the plaintiff. Hence the plaintiff cannot lose in this case. It would be more sensible, in my opinion, if the case were sent back for the assessment of damages only, saying what the main opinion in substance and effect *has* said, that defendant is liable as a matter of law. (Emphasis mine.)