424 P.2d 142

**Duane ROYLANCE, Plaintiff and Respondent,**

v.

**Stephen L. DAVIES, Defendant and Appellant.**

**No. 10641.**

Supreme Court of Utah.

Feb. 20, 1967.

Skeen, Worsley, Snow & Christensen, Salt Lake City, for appellant.

Ray H. Ivie, Provo, for respondent.

ELLETT, Justice.

The plaintiff was a guest in his buddy's automobile on a Christmas day. Both had celebrated the occasion with a few nips of liquid refreshment containing the proper amount of alcohol to bring cheer and gladness to the hearts of the partakers. Before the day was over, the defendant driver had run his car against a steel light pole causing the plaintiff to sustain injuries. At that time or later plaintiff decided that he, like Old Dog Tray, had been in the wrong company all day long. He lost some vision in one eye as a result of being in the collision, and it may be that the impaired vision enabled him to see more clearly than before that the law being what it is in Utah, he should have stayed home. Utah has a statute which prevents a guest from recovering from his host except for injury proximately resulting from intoxication or willful misconduct. (Section 41–9–1, Utah Code Annotated 1953.) It is further provided therein that the plaintiff has the burden of showing that such intoxication or willful misconduct *was the proximate cause of the injury.* (Emphasis added.) The courts of this State cannot be the forum wherein the wisdom of the statute or the lack of it is debated. The legislature has already performed that function, and that department of government has said in language too clear to be misunderstood that a guest cannot recover from his host for ordinary negligent acts

in connection with the driving of the automobile in which both are riding. The action can be maintained only where the injury results from intoxication on the part of the host or from his willful misconduct.

It is natural for all to have a sympathetic understanding of the feelings of an injured plaintiff who is left alone to bear the consequences of his injuries due to the negligence of his host, and especially is this so when he sees the host wrap himself in a cloak of legal immunity and walk away from the scene of negligence scot free.

Jurors are more likely to try to do fireside justice between the parties in the face of a guest statute than are judges, who have a duty to enforce the law as it is written. This duty judges must perform even though to do so may result in depriving an injured plaintiff of any recompense whatsoever for injuries sustained. If it is thought that a person is in need of money but cannot legally recover it due to a law such as the guest statute, we should pass the hat and not say that mere negligence is willful misconduct. To hold simple negligence to be willful misconduct is to amend or repeal the law as passed by our legislature, and this judges cannot do.

Although plaintiff and defendant had each consumed two and part of a third drinks of whiskey within two and a half hours prior to the accident, no claim is made that such drinking had anything to to with the collision in question. All of the evidence indicates that the defendant was not under the influence of intoxicating liquor in any way whatsoever, and this is true from the testimony given by the officer who investigated the matter and who was at the scene shortly after the crash.

The facts of this case are not in dispute. The parties stopped at a stop sign on the west side of a heavily travelled, divided highway. The plan was to cross through the southbound lane of traffic and enter into the northbound flow and go north for some distance until a break could be found in the dividing barricade separating the two directions of traffic, then make a U turn and return to the beer tavern where plaintiff worked. The tavern was on the west side of the highway just north of a service station at which the defendant bought his gas from time to time. That service station was approximately 289 feet from the parties when they were at the stop sign.

After waiting some time for a break to show up in southbound traffic, the defendant became impatient and spun gravel as he started north on the west side of the berm or shoulder of the highway. It was dark (5:30 p. m.), and a light snow was falling, although there was no snow on the ground.

The plaintiff was thrown back in his seat by the sudden start and asked the question, "Where are you going?" to which the defendant replied, "I have got to get gas

anyway," and instantly thereafter the impact occurred.

The shoulder is thirty feet wide, graveled, and frequently travelled by cars turning from the roadway into stores and shops adjoining the highway. Down the middle of this shoulder there exists a string of steel light poles 189 feet apart running in a northerly direction from the stop sign.

The defendant turned west of the first pole, which was near where he was stopped by the stop sign and which was just north of the side street on which he had been travelling. At no time did his speed exceed twenty-five miles per hour according to the testimony of all witnesses.

There was no traffic on any part of the shoulder other than defendant's car, and the sole cause of the collision with the second steel pole was the fact that the front wheel of defendant's car struck a low cement abutment a few feet to the south and west of the second light pole above referred to. This piece of raised cement had been the base of a wooden pole long since taken down. A car could pass over it safely by straddling it.

When the front wheel of the automobile struck this solid object, the car was thrown northeasterly and struck the pole, causing the injuries complained of.

There was no evidence that the defendant intentionally struck the cement abutment, and the only logical inference which could be drawn is that he just did not see it.

The court summed up the contention of the plaintiff in his Instruction No. 2 as follows:

That at approximately 1400 North in the City of Provo, Utah County, State of Utah, on U.S. Highway 91, the defendant digressed from the regularly traveled portion of the road, and drove off the regularly traveled portion of the road on the west side of U.S. 91 into a steel utility pole. At the time and place alleged, the manner in which defendant drove said automobile amounted to willful misconduct.

In the case of Stack v. Kearnes, 118 Utah 237, 221 P.2d 594, this court approved instructions given by the trial court as follows:

Willful misconduct connotes a greater wrongdoing than mere negligence or even gross negligence. It includes a conscious or intentional violation of definite law or rule of conduct with the knowledge of the peril to be apprehended from such act or failure to act.

Instruction No. 7 further refined the definition as:

The intentional doing of an act or intentional omitting or failing to do an act, with knowledge that serious injury is a probable and not merely a possible result, or the intentional doing of an act with

wanton and reckless disregard of the possible consequences. It involves deliberate intentional or wanton conduct in doing or omitting to do an act with knowledge or appreciation that injury is likely to result therefrom.

That plaintiff says that when defendant changed his mind about crossing the multilaned highway and accelerated his car up the wrong shoulder, he did an intentional act with knowledge that serious injury was a probable and not merely a possible result.

Let us inquire further into this matter.

In Sparrer v. Kersgard, (Calif., 1939), 85 P.2d 449, there was evidence that the driver was going in excess of the speed limit and on the wrong side of the road. The court stated:

> After all of the evidence had been taken the defendant made a motion that the jury be directed to bring in a verdict in his favor. The trial court denied the motion and the defendant claims the trial court erred. We think that claim is well founded. It must be conceded at once that there was evidence that the defendant violated the statute prescribing the speed of motor vehicles and that he was driving on the wrong side of the road. But such facts, standing alone, do not constitute wilful misconduct.

In the case of Cusack v. Longaker, (C. C.A.2d), 95 F.2d 304, the host, at night, drove by a stop sign at a speed testified to be between twenty and thirty-five miles per hour and collided with an automobile on the favored highway. The host said he did not see the stop sign, although it had red reflectors to catch the rays of headlights of approaching cars. Judgment was for the defendant, and the plaintiff appealed. Although the appellate court found that the trial court had erred in favor of the defendant in giving instructions to the jury, which error had caused the verdict, nevertheless it affirmed the judgment as rendered and did so upon the ground and for the reason that the case should not have been submitted to the jury in the first place. The court said:

> If negligence were all that the plaintiff were required to prove, he undoubtedly made a case for the jury; but we do not think that Longaker's failure to see the sign and his maintenance of a speed of 35 miles in crossing a street at 1 o'clock in the morning is evidence of negligence so gross as to justify a finding of "wilful and wanton misconduct."

Since there was no traffic along the thirty-foot shoulder and no reason to anticipate any at the time defendant entered thereon for the purpose of travelling less than 300 feet to his destination, the mere driving on the wrong side of the highway could not be a cause of the injury. There is no contention that the speed driven was unlawful or in excess of the speed limit.

This court in the case of Ricciuti v. Robinson, 2 Utah 2d 45, 269 P.2d 282, had occasion to rule on the question of whether a speed of sixty miles per hour in a thirty-mile residential zone would amount to willful misconduct, and it was there said:

> Under the facts of this case, a reasonable person could not conclude that defendant intentionally did or failed to do an act that would fall within this definition. These people were friends. There is no fact or combination of facts in the record which showed a wanton or reckless disregard of the consequences, which in this case were a loss of control due solely to the accidental dropping of a lighted cigarette in the defendant's clothing and the car jumping the curb when defendant tried to dispose of the lighted cigarette. * * * The assumed fact that defendant was travelling 60 m. p. h. in a residential zone was not a fact that would indicate defendant had knowledge or any reason to believe that such speed probably or even possibly would result in a lighted cigarette accidentally falling out of his mouth. Such an event as well could have occurred while travelling 25 m. p. h. in any kind of weather and in any speed zone. It was not the speed, but the dropping of a lighted cigarette that resulted in the loss of control, and this accidental and involuntary circumstance cannot be said

to be wilful misconduct under any reasonable theory or basis of fact.

The fact that it was dark could make no difference, as the defendant's car had headlights, and no complaint was made as to any defect with relation thereto.

Let it be assumed that the defendant drove his car into the pole and that he did not hit the concrete obstruction in the highway. One would have to find that he willfully drove into the pole to make a case of willful misconduct under the evidence in this case.

A case very similar to the one before us now is that of Fiske v. Wilkie, 67 Cal.App. 2d 440, 154 P.2d 725, wherein the host was driving with no other cars on the road. She testified that she felt fine and did not know what caused her car to go off the road onto the left side and collide with a tree some 15 feet from the paved portion of the roadway. In its holding regarding the guest-host relationship, the court at page 731 said:

> In the instant case we fail to find any evidence that the erratic course taken by defendant's automobile when it left the highway and crashed into a tree was the result of any intentional act or omission on her part. She seems to have been just as completely surprised as were her guests, and no better able to explain the cause of the accident. It might be inferred from the evidence that defendant

driver fell asleep or otherwise became unconscious or inattentive, which might have been negligence on her part.

Experience has taught that certain kinds of automobile accidents rarely happen without negligence on the part of the driver; that in many, if not most, of such accidents, the driver alone knows just what happened; and, for that reason, if the driver can not or will not explain the cause of the accident, those injured in the accident, in order to enforce their remedy, are entitled to the presumption of the driver's negligence arising under the doctrine of res ipsa loquitur upon proof that the accident occurred while the automobile was under the exclusive control of defendant. On the other hand, experience teaches that most accidents of the kind in the instant case are not the result of the driver's intention to harm guests or even the result of the driver's disregard for the probable or possible consequences of any act, but that they are usually the result of negligence or inadvertence. From a reading of the entire record in the instant case in the light most favorable to plaintiffs, we are unable to find any evidence of wilful misconduct on the part of defendant, or evidence of any facts or circumstances from which wilful misconduct could be inferred. Therefore, it must be held that plaintiffs failed to prove their second cause of action.

In this case it is difficult to see how any acts done by the defendant, either singly or in combination, could have been done with knowledge that injury to the plaintiff was probable. Does not the law of self-preservation cause us to doubt that he even foresaw any injury to himself and a fortiori to the guest? His failure to see the obstructions in the road in time to avoid hitting them at most would be simple negligence and cannot be catapulted to the status of willful misconduct by any stretch of the imagination.

Defendant complains of the failure of the jury to find assumption of the risk or contributory negligence on the part of the plaintiff.

The only risk which plaintiff could have assumed would have been the risk of being injured because of defendant's intoxication; but since the plaintiff never claimed the defendant was under the influence of intoxicating liquor, he had no risk to assume. Since the plaintiff made no contention that the drinking of the liquor had any effect whatsoever on the ability of the defendant to drive the automobile, the jury could not parlay the few drinks which he got in evidence into willful misconduct on the part of the defendant.

The plaintiff could not be held to have assumed any other risk of which he neither knew nor had time to do anything about. A speed of 25 miles per hour would cover

the 189 feet in approximately five seconds. (It is interesting to note that the question asked by plaintiff and the reply of the defendant would take about that same amount of time.)

 Ordinary contributory negligence is no defense to willful misconduct. (See Prosser on Torts, Third Ed., p. 436.)

 When there is substantial dispute in the evidence, a jury question is presented; but when there is no substantial dispute in the evidence and when the court can say as a matter of law that reasonable men could find only one way on the facts, then it is his duty to determine the applicable law and direct the jury to return a verdict under the law and the facts presented.

When an appellate court cannot agree on the · question of whether reasonable men could differ on what facts could be deduced from the evidence, then it would seem that to disturb the jury's finding would indicate that the judges were themselves unreasonable men.

However, when it comes to applying the law to undisputed facts, the appellate judges are not to be classed as unreasonable simply because they are unable to agree with the trial judge or amongst themselves. The law has not reached the certainty of the exact sciences, and the same interpretation will not necessarily be made by all judges who may have occasion to rule upon a given matter. Judges will tend to vary in their opinions because of economic, religious, political, or cultural background and because of their experiences in life. All of these matters will prevent the law from becoming a cold, lifeless, inflexible set of rules, and will enable the law ever to be subject to the refining processes so necessary to keep a dynamic society in obedience to a satisfactory system of laws.

It is the holding of this court that there is no evidence of willful misconduct in the record to sustain the verdict, and the case is reversed with directions to the trial judge to enter a judgment of no cause of action in favor of the defendant.

CALLISTER, J., concurs.

HENRIOD, Justice (concurring).

I concur. In doing so, I feel constrained to defend the main opinion against what I think may be some disarming and perhaps unrealistic bits of criticism and bigger bits of deification of the jury system.

The dissent decries this court's negation of the jury's verdict. This court has taken such a course in more than a few opinions, —some of which have been sired by the dissent's author.

The dissent volunteers that "The jury *undoubtedly* thought that the defendant's conduct was highly irrational." With equal

facility I could suggest that "The jury *undoubtedly* thought the insurance company could afford to pay up to the policy limit, —$10,000," possibly discounting somewhat the plaintiff's statutory liability. It is rather interesting to this writer to observe how many jury verdicts just *happen* to be a round figure $10,000. Without saying so out loud, one might guess that more than one jury might have stretched the dollar and shriveled the concept of tort liability, especially, where it seems almost obvious the jury knew there would be $10,000 available from insurance which the alleged tortfeasor would not have to pay.

The dissent's painstaking detail of plaintiff's injuries and the seriousness thereof tends to prove my point,—that the jury also detailed them and decided that under the circumstances, it should grant him a judgment for that reason. Injuries should not be canvassed as a *reason* for a judgment but only as an incidence of liability.

There have been more instances than one where a wife has sued her own husband under guest statutes, accusing him of being a reckless incompetent and has obtained a verdict against him payable by his insurance. Very likely together they may buy a new car in his name with the money.

I think the jury system still is the best system, but in some cases it can serve as an anathema to the law.

CROCKETT, Chief Justice (dissenting).

It is my firm conviction that there is ample justification in the evidence for the trial judge's submission to the jury the issue of the defendant's willful misconduct; and for the jury's finding against him on that issue. I am similarly convinced that this reversal deprives the plaintiff of his right of trial by jury and unjustly takes from him a judgment that in fairness he is entitled to; and that this amounts to a wholly unwarranted intrusion into the well established prerogatives of the jury and of the trial court.

This court has many times reaffirmed the importance of the right of trial by jury; and of the prerogatives of the jury and the desirability of sustaining verdicts fairly arrived at;[1] and also of the breadth of discretion which the trial court, because of its advantaged position,[2] should be allowed in passing upon the sufficiency and credibility of evidence; and in the granting or denying of new trials.[3]

The majority opinion states those portions of the evidence it refers to fairly and

1. Hales v. Peterson, 11 Utah 2d 411, 360 P.2d 882.
2. As to advantaged position of trial court, see statement in Nokes v. Continental Min. & Mil. Co., 6 Utah 2d 177, 308 P.2d 954.
3. Geary v. Cain, 69 Utah 340, 255 P. 416. See Holmes v. Nelson, 7 Utah 2d 435, 326 P.2d 722; and King v. Union Pacific R. Co., 117 Utah 40, 212 P.2d 692.

accurately, and it is difficult for me to accept the premise that it impresses me as being based upon: a somewhat labored effort to so view the evidence as to support a foregone conclusion that the actions of the trial court and of the jury were devoid of reason. But I am equally at a loss to perceive any other basis for the conclusion it reaches. In my view of this case we should not avoid facing up to those aspects of the evidence and the reasonable inferences which the jury could draw therefrom which would tend to support their finding. It is therefore my purpose to set forth, with such clarity and persuasiveness as I am capable of, the considerations and the evidence which convince me that the verdict is fully justified and should be sustained.

If the point of view adopted is to look at this case as jurors, it should be approached with some tolerance and understanding for the different perspectives from which people of varying intelligence, experience and conditioning might see it. Indeed it might help us to be more realistic in this regard to look at this situation as the trial court and jurors actually must have done in this case and with a view to sustaining their conclusion, rather than to destroy it. It is submitted that if the evidence is looked at with that purpose in mind, together with the fair inferences that could be derived from the experience and common sense of the jurors, they could

reasonably have believed each and every one of the following facts, which together provide an entirely reasonable basis for their conclusion.

The plaintiff and defendant had been friends of at least some degree and had been drinking together on Christmas day. Although the plaintiff did not stigmatize the defendant by any charge of drunkenness, the fact of the just prior drinking of whiskey is one of the important components in searching out the cause of this accident. The plaintiff says they had had "a few highballs." The defendant admits to a couple of drinks of whiskey. Hardly anyone ever admits to having taken more. It was dark and snowing when the defendant drove eastward on Riverside Avenue to the west edge of Highway 91. After some delay because of the heavy traffic, he became irritated and abruptly changed his course, swung his car northward along an area used for parking just off the west side of the highway, as fast as his car could go. Under persistent questioning about rapid acceleration he so admitted. The terms used were "digging out" and "spinning gravel," throwing it against the fenders. He proceeded in this manner for a distance of just under 200 feet and crashed into the telephone pole.

Plaintiff was pressed as to why he had not protested when the defendant changed direction and started on the course of conduct just described. His response was

that it all happened so fast that he only had time to say: "Where are you going," or "What are you doing," and the defendant was making answer when they crashed into the telephone pole. Plaintiff said: "It all happened so quick—it seemed like a split second—all I remember is hitting the pole."

The jury undoubtedly thought that the defendant's conduct was highly irrational. They could well believe that it is a primary requisite to safe driving to at least drive the car on the highway where it is supposed to be driven, but that the defendant did not even exercise that minimum of judgment and care, but impetuously decided to make a mad dash through an area neither conditioned for nor intended for such travel, culminating in a crash against a telephone pole and a mail box which were in plain sight. The evidence is that this area "was not surfaced, it may have been asphalted in the past, but it was broken up and graveled over," an area "where they used it to pull in and park." These facts are also supported by the pictures, and the jurors as residents of the area could not help knowing it anyway. Furthermore, because of these facts, it was an area where there were not only likely to be obstructions, but where there actually were obstructions, as the result demonstrated.

The jury was not limited to a consideration of any particular aspect of the evidence: neither to the fact that the defendant had been drinking, nor that on a dark and stormy night he had become annoyed and made an abrupt and irrational decision to "dig in" as fast as his car could go along the wrong side of the highway in an area not conditioned for such travel, and with apparent total unconcern for safety, ran into the telephone pole. The jury was entitled to, and undoubtedly did, make their analysis and come to their conclusion upon considering in combination all of the facts disclosed by the evidence and contributing to the end result.[4] When they are so considered they impress me as about as likely a set of circumstances to justify submission of the issue of willful misconduct to the jury as any I can readily conjure up in my mind, except only a situation where someone set about with deliberate intent to injure someone else.

It is not suggested that defendant acted with any deliberate intent to injure the plaintiff or himself. The law does not so require. The trial court properly instructed the jury that they could not find the defendant guilty of willful misconduct for ordinary negligence, nor even for gross negligence, but only if he acted in such a reckless manner that he should have realized that injury to others would be a

4. See Jumper v. Goodwin, 239 S.C. 508, 123 S.E.2d 857; also Layman v. Heard, 156 Or. 94, 66 P.2d 492.

**406**

probable result.[5] He also submitted to the jury the issues as to assumption of risk and contributory negligence.

Having set forth the situation above brings me to the point at which I am baffled in this case. A well-respected, experienced, perceptive and judicious trial judge, from his position of advantage in relation to the trial and the witnesses, has believed that the evidence was sufficient to support a jury finding on the issue of willful misconduct, both at the time of the trial and in denying a motion for a new trial. The jury of presumably fairminded and reasonable citizens have agreed without a dissenting vote in finding for the plaintiff on this issue. For whatever value it may have, there is added thereto the firm conviction of this writer, concerning whose reasonableness in this matter I must leave to others to judge. Yet this court wipes out everything heretofore done in this case on the ground that no reasonable person could so believe.

The differences of opinion just pointed out would seem to bring this case within the well established principle stated by the late and respected Justice Frick of this court in Newton v. Oregon Short Line RR. Co.,[6] that " * * * Unless the question of negligence is free from doubt, the court cannot pass upon it as a question of law; * * * if the court is in doubt as to whether reasonable men * * * might arrive at different conclusions, then this very doubt determines the question to be one of fact for the jury * * *." When this is so, it is the right of the parties to have a jury determine it. This court has heretofore paid its respect to the virtue of judicial restraint and the desirability of observing it by not encroaching upon this foundational right by which there is preserved to the people the privilege of presenting their disputes to a representative group of citizens. It is the means of keeping the law close to the people and serves as the ultimate safeguard against the deprivation of or the overriding of individual rights by any arbitrary or despotic action.[7]

Although the nature of the plaintiff's injuries and the extent of his damages do not go directly to the question of the sufficiency of the evidence to sustain a finding of willful misconduct, it is not amiss to be aware of their seriousness to him. The medical evidence shows that he has suffered painful, serious and permanent injuries: scars upon his face; loss of function and feeling by impairing some of both sensory and motor nerves about his eyes; and most serious of all, is left blind in his right eye. He has incurred substantial medical and hospital bills; and is under the necessity of long-term, perhaps lifetime, further checking and

---

5. Stack v. Kearnes, 118 Utah 237, 221 P.2d 594.
6. Newton v. Oregon Short Line RR. Co., 43 Utah 219, 134 P. 567.

7. See statement in Stickle v. Union Pac. R. Co., 122 Utah 477, 251 P.2d 867.

medical care. He is a man who works for $300 per month and thus these considerations would undoubtedly be of grave importance to him. He has gone through all of the suffering indicated; and the tortuous procedures leading up to and through a trial by jury, wherein by the rulings of the judge and the determination of the jury he has been awarded a verdict of $10,595.00. Under the circumstances hereinabove set forth as they appear to me, to now take this judgment away from him is in my opinion an act which I am impelled to protest as an injustice, the responsibility for which I have no desire to share. I would affirm the judgment.

TUCKETT, J., dissents.