Thomas J. **BRANTNER**, Appellant,

v.

Carl **POOLE**, d/b/a Utah Sanitary Company, Appellee.

No. 73–1406.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Oct. 17, 1973.

Decided Dec. 3, 1973.

————◆————

Ray R. Christensen, Christensen, Gardiner, Jensen & Evans, Salt Lake City, Utah, for appellant.

Raymond M. Berry, Worsley, Snow & Christensen, Salt Lake City, Utah, for appellee.

Before SETH and DOYLE, Circuit Judges, and TALBOT SMITH, District Judge*.

* Of The Eastern District of Michigan, sitting by designation.

SETH, Circuit Judge.

Thomas J. Brantner appeals from the order of the United States District Court for the District of Utah granting summary judgment to the defendant-appellee, Carl Poole. This is a diversity suit for the recovery of damages resulting from a truck accident in which appellant Brantner was seriously injured.

The basic issue on appeal is, of course, whether the pleadings, depositions, and affidavits in the record "show that there is no genuine issue as to any material fact and that the [defendant] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This record is to be examined "in the light most favorable to the party opposing the motion." Frey v. Frankel, 361 F.2d 437 (10th Cir.); see also James v. Atchison, T. & S. F. Ry., 464 F.2d 173 (10th Cir.).

Appellant Brantner and a friend, William Hutchinson, were hitchhiking in the area of Alta, Utah. They were given a ride en route to Salt Lake City, Utah, by Dennis Jarvis who was driving a sewage tank truck owned by Poole and then being used in his sewage disposal business. The route from Alta to Salt Lake City follows downhill what is called Little Cottonwood Canyon, and the road is narrow and winding with grades of ten per cent at various points. After going down the canyon for some distance, the two-speed gear in the truck's rear transmission disengaged or "kicked out," apparently without warning, and consequently the truck was "freewheeling." Unrestrained by the braking force of the gears and engine, the truck, which had been traveling at what has been estimated as between seven and twenty-five miles per hour, started gaining speed. The driver attempted to reengage the two-speed gear by accelerating the engine but to no avail. He then tried to apply the airpowered brakes; this too was unsuccessful as the engine was not running and the truck continued to gain speed. In approximately thirty seconds to a minute the truck was going somewhere in the range

of sixty to seventy miles per hour down the narrow, winding canyon road. The driver decided that the only course was to "ditch it" by running into the side of the mountain. He did so, and the truck overturned. Mr. Brantner, who was sitting next to the right-hand passenger door, was thrown out of the truck's cab and sustained fractures of his neck. He is now a permanent quadriplegic.

Following the accident, two mechanics hired by the appellant and appellee, respectively, examined the wreckage of the truck. It was found that the truck was, prior to the accident, in a deplorable state of repair. The appellee's mechanic, while examining the truck, stated that "whoever put this truck on the road ought to be shot." The truck was a 1961 International model which defendant Poole had purchased in July 1971, and had equipped with a sewage tank which at the time of the accident was filled nearly to its capacity of 1,175 gallons. The truck was not equipped with taxi or "fail safe" brakes with which, according to the appellee's mechanic, the truck should have been equipped for use in such a canyon as Little Cottonwood. The air lines for the brakes had been ruptured prior to the time of the accident and an attempt had been made to patch up the breaks with friction tape. The brake drums were so worn that they apparently could not have passed a state safety inspection. The worn condition of the left wheel bearing would result in the generation of excessive heat, transmitted to the brake shoes and drums, and thereby further reducing the braking efficiency. Most importantly, the teeth in both the high and low range of the two-speed gears were so badly worn as to be susceptible to disengagement.

Dennis Jarvis, the driver, stated by way of his deposition testimony that Mr. Poole, the appellee, had previously warned him about the possibility of the gears disengaging, but had not given him any specific instructions in this regard. All of the maintenance on the truck was done by Mr. Poole, apparently

because the garages did not like the truck's usual cargo. Although the state of repair of the gears would not necessarily have been apparent, the defendant did the work on the truck, including a replacement transmission, and work on the brakes, and he was obviously familiar with the mechanical condition of the truck. His warning to the driver of the possibility that the gears in the rear axle would disengage is a significant factor relating to the cause of the accident.

All parties recognize that the single issue before us is whether there were fact issues unresolved which required that the case be submitted to a jury.

Whether there were such issues, of course, depends upon the application of the Utah Guest Statute, and the determination of the applicable legal doctrines thereunder. It is conceded that appellant Brantner comes within the definition of a "guest" as used in the statute. The Utah Guest Statute, Utah Stat.Ann. § 41–9–1 (1951) (Repl.Vol. 5A, 1970), in material part provides:

"Any person who as a guest accepts a ride in any vehicle, moving upon any of the public highways of the state of Utah, and while so riding as such guest receives or sustains an injury, shall have no right of recovery against the owner or driver or person responsible for the operation of such vehicle . . . Nothing in this section shall be construed as relieving the owner or driver or person responsible for the operation of a vehicle from liability for injury to or death of such guest proximately resulting from the intoxication or willful misconduct of such owner, driver or person responsible for the operation of such vehicle; . . . . ."

The burden of establishing that wilful misconduct was the proximate cause of injury or death is upon the plaintiff. Utah Stat.Ann. § 41–9–1 (1951) (Repl. Vol. 5A, 1970).

The Supreme Court of the State of Utah has had occasion to define wilful misconduct as that term is found in the Utah Guest Statute as "the intentional doing of an act, or intentional failure to do an act, with knowledge that serious injury is a probable result." Brown v. Frandsen, 19 Utah 2d 116, 426 P.2d 1021 (1967).

The courts of that state have held that such acts or omissions as falling asleep at the time of an accident, Brown v. Frandsen, supra; inadvertence in reaching for a cigarette, Milligan v. Harward, 11 Utah 2d 74, 355 P.2d 62 (1960); driving on the shoulder and in the wrong direction on a multilane highway, Roylance v. Davies, 18 Utah 2d 395, 424 P.2d 142 (1967); and driving on a curved road at fifty miles per hour without keeping a proper lookout and failing to observe that the curve could not be negotiated at that speed, Mukasey v. Aaron, 20 Utah 2d 383, 438 P.2d 702 (1968), all do not constitute wilful misconduct within the meaning of the Utah Guest Statute's use of that term.

■ The Utah decisions relating to the Guest Statute are concerned for the most part with affirmative acts of negligence in the operation of a car, rather than with its mechanical condition. The question is whether the state of disrepair of the truck here concerned had proceeded to a degree, combined with the owner's knowledge thereof, that it could give rise to genuine issues of fact which are material under the Utah Guest Statute. The question thus becomes whether the disrepair of a motor vehicle can be so gross as to constitute "wilful misconduct" and be the proximate cause of the damages. We must conclude under the Utah decisions that this type of conduct is within the Guest Statute, and the statute is not limited to the manner in which a vehicle is operated.

■ The Utah case of Milligan v. Harward, 11 Utah 2d 74, 355 P.2d 62, considered the Guest Statute provisions in a manner of operation case, and concluded that the intentional doing or failure to perform an act with knowledge

that serious injury was probable and not merely possible, was within the statute. The decision also held that gross negligence does not constitute wilful misconduct as the term is used in the Act. The reference in the Milligan case to a failure to act is significant on the issue here. Under the record the extent of the failure of the defendant to keep the truck in repair, or his inaction in permitting the truck to deteriorate to the extent it did, raised issues of fact which were material under the Guest Statute as construed by the Utah court. The statute, in our opinion, includes the mechanical condition of the vehicle in addition to the manner in which it was operated.

Since there are these material issues remaining under this construction of the statute, the summary judgment must be and is vacated, and the case is remanded for further proceedings consistent with this opinion.